## THE CHICAGO HAIR AND BRISTLE COMPANY

### *v.*

## SEBASTIAN MUELLER.

*Opinion filed June 16, 1903—Rehearing denied October 7, 1903.*

1. FELLOW-SERVANTS—*when question of fellow-servants is for jury.* Whether the party whose negligence is claimed to have caused plaintiff's injury was a fellow-servant of the plaintiff is a question for the jury under evidence that such party was an assistant foreman, who gave orders to plaintiff and others, and that upon the day of the injury he was in charge of the work.

2. SAME—*what does not create relation of fellow-servants as a matter of law.* That an assistant foreman sometimes engaged in labor as a common workman with other servants does not, as a matter of law, constitute him their fellow-servant.

3. NEGLIGENCE—*when act is the proximate cause of injury.* An act or omission is the proximate cause of an injury when, under all the attending circumstances, a person of ordinary prudence would have foreseen that such act or omission would probably result in consequent injury to some one.

4. MASTER AND SERVANT—*what dangers not assumed by a servant.* Extraordinary perils arising from the negligence of the master are not assumed by a servant unless they are known and voluntarily encountered by him, or are so obvious and expose him to danger so imminent that an ordinarily prudent person would not incur the risk even at the master's command.

5. SAME—*when questions of assumption of the risk are for the jury.* Whether plaintiff knew of the danger of bales of goods falling upon him in a warehouse, or the danger was so obvious as to charge him with knowledge, are questions for the jury under evidence that the bales were left in a dangerous condition by the assistant foreman, that the light in the warehouse was dim, and that plaintiff, in executing orders, could not clearly see his surroundings.

*Chicago Hair and Bristle Co.* v. *Mueller,* 106 Ill. App. 21, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

F. J. CANTY, and J. C. M. CLOW, for appellant.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The action below was in case by the appellee, against the appellant company, to recover damages for a personal injury inflicted, as it was alleged, by the actionable negligence of the servants of the appellant company. Judgment in the sum of $6500 awarded the appellee was affirmed by the Appellate Court for the First District on appeal, and a further appeal in the same behalf has brought the case to this court.

The court refused to grant a motion, entered by the appellant company at the close of all the evidence, peremptorily directing the jury to return a verdict in its favor, and this action of the court is assigned as for error.

The appellant company was engaged in the business of buying, baling and selling hair and bristles. The hair was assorted according to quality and pressed into bales, each of which was about five feet long, three and one-half feet wide, two and one-half feet thick and of an average weight of about five hundred pounds. The appellant company maintained a shed one hundred and forty feet long and forty feet wide, covering a single large store room, in which the bales of hair were stored. In its length the shed extended from north to south, and it was provided with a large double door twelve feet wide at either side, making a passageway east and west through the building of the width of twelve feet. The bales of hair were piled in rows, six bales in height, reaching from either side of the passageway to the north and south ends of the building, leaving a passageway twelve feet

in width through the shed from east to west. In forming these rows of bales it was the custom to begin either at the north or south wall, and to place the first bale in the bottom of the pile a distance of twenty-one inches, being half the width of the bale, from the wall. The bale in the next layer of bales in the row would be laid so as to overlap the last bale in the bottom layer about three and one-half or four inches, and the bale at the end of each successive layer of bales was so placed as to extend the same distance beyond the other toward the wall until the last bale at the top of the pile would rest against the wall. A row of posts supporting the roof of the shed extended along the center of the storage room from north to south. Eight rows of bales could be piled on the floor of the building from east to west, four rows being on the east side of the posts and four on the west. These rows were numbered from 1 to 8, beginning at the east side of the shed or warehouse. On the day when the appellee was injured the south end of the wareroom was full of bales of hair. The appellant company desired to remove from storage and ship a car of bales of a certain quality. The bales containing the hair of the quality needed were at the south end of rows 5 and 6, in the south end of the warehouse, and in order to reach them rows 3 and 4 were removed, making an opening to the passageway between the large doors at the center of the sides of the building. A switch track ran along the south end of the warehouse. There was a platform along the switch track at the south-east corner of the warehouse, from which a runway extended to the large door in the center of the east side thereof. Appellant's assistant foreman, Hermes, climbed to the top of rows 5 and 6 and proceeded to throw down upon the floor the bales that were to be shipped, and other employees of the appellant company would move them to the main passageway, where they were weighed and marked, and from thence other employees of the company trucked them along the runway and loaded

them on the car. The appellee was in the employ of the
appellant company to work in what is called the "hair
field,"—a place outside the shed or warehouse where the
hair was received, assorted and baled. On the day he
received his injury he was transferred by the appellant
company from the hair field and ordered to wheel or truck
the bales of hair that were to be shipped, from the east
door of the shed along the runway to the platform by the
side of the switch. He worked there, trucking the bales,
until about three o'clock in the afternoon of that day,
when Mr. Sprafske, another of appellant's employees,
who was engaged in moving the bales of hair which ap-
pellant's assistant foreman, Hermes, had thrown down
from rows 5 and 6, at the south end of the warehouse,·
to the scales, fell sick, and appellee was ordered to take
his place and do the work in which Mr. Sprafske had
been employed. Appellee was engaged in this work until
about five o'clock in the evening, when Hermes supposed
a sufficient number of bales had been thrown down to fill
the car. Hermes came down from the piles and went out
to the car. Appellee and one Heinlein brought four or
five bales to the scales, leaving two bales which had been
thrown down by Hermes lying between the south wall
of the warehouse and the south ends of rows 5 and 6 of
the bales. Hermes, who was at the car, directed the ap-
pellee and Heinlein to go into the warehouse and bring
those two bales. Weingart, chief foreman of the appel-
lant company, reiterated the order. The appellee and
Heinlein re-entered the warehouse and went to the south
end, brought out one of the bales, marked it, put it out-
side the warehouse and went back for the other bale.
The appellee took hold of the bale lying on the floor and
placed it on its edge, when several bales from the end
of row 6, which had been left there six bales high and
overhanging the bottom bales a distance of some twenty-
one inches, fell upon him and inflicted the injuries for
which judgment for damages was awarded.

Counsel for appellant company do not contend that Hermes was not guilty of negligence in leaving row 6 with the topmost bale thereof overhanging the lower bales of the row and also overhanging the two bales which he had removed from the rows and thrown down upon the floor, but their insistence is, that the court should have declared, as matter of law, that the appellant company was not liable to answer in damages to the appellee for three reasons, viz.: First, because, as they insist, Hermes, though usually in the absence of Weingart, head foreman of the appellant company, a "sub-boss" and on many occasions exercising that authority, was on that day, Weingart being present, but a fellow-servant of the appellee; second, that the negligence of Hermes was not the proximate cause of the injury, and hence not actionable, however negligent it might have been; and third, the court should have directed a peremptory verdict on the ground that the condition in which the bales at the end of row 6 were left by Hermes was open and obvious to the appellee, and the dangers thereof, if any, were apparent and patent to him, and therefore it must be held, as a matter of law, that he assumed the risk of continuing to engage in work in such a dangerous place.

The evidence showed that Hermes held the position of assistant foreman to the appellant company; that he hired and discharged employees; that he gave orders to appellee and other employees, and the evidence tended to show that on the day in question he had charge and control of the work of getting the bales out of the warehouse, and that he occupied a position of superiority to appellee and the other workmen. The mere fact that Hermes engaged in some labor as a common workman, did not, as a matter of law, make him any the less a vice-principal. (*Pittsburg Bridge Co.* v. *Walker*, 170 Ill. 550; *Chicago and Alton Railroad Co.* v. *May*, 108 id. 288.) It was

a question of fact whether he sustained the relation of fellow-servant to the appellee.

The trial court could not declare, as a matter of law, that the negligence of Hermes, the assistant foreman, was not the proximate cause of appellee's injury. When the assistant foreman came down from the pile of bales and went outside of the warehouse to the car, which was about five minutes before the appellee was injured, he left the south ends of rows 5 and 6 of the bales in the following condition, according to his own testimony, viz.: "Two or three bales were at the bottom of the first row from the post (row 5). The next pile (row 6) was six bales high. In the second row from the post (row 6) the first pile of bales was straight up, six high, and no bale at the bottom. The piles leaned over to the south. The top bale was half the width of a bale over the bale at the bottom. A bale was three feet six inches wide." Hermes directed appellee to return to the warehouse and get two more bales which were upon the floor, or under the end of row 6. It was from the second row west of the posts (row 6) that the bales fell which struck and injured the appellee. Reasonable prudence and foresight would have suggested to any person of ordinary intelligence and common experience that the bales of hair so overhanging the floor at the top of row 6 would likely fall to the floor, and that the probable result would be an injury to any one standing near or beneath the overhanging bales. At least it was a question of fact, and not of law, whether the injury received by appellee was such as would likely follow from the manner in which the bales were left in row 6 by the assistant foreman. An act or omission is to be regarded as the proximate cause of an injury when, under all the attending circumstances, a person of ordinary prudence would have foreseen that the act or omission would probably result in the infliction of an injury on some one. (1 Thompson on Negligence, sec. 50; *Armour* v. *Golkowska*, 202 Ill. 144.)

If the negligent act and the injury are known, by common experience, to be usual in consequence, and the injury such as is liable, in the ordinary course of events, to follow the act of negligence, it is a question of fact for the jury whether the negligence was the proximate cause of the injury. *Chicago and Alton Railroad Co.* v. *Pennell,* 110 Ill. 435; *Armour* v. *Golkowska, supra; West Chicago Street Railroad Co.* v. *Feldstein,* 169 Ill. 139.

The superior court also correctly refused to declare that, as a matter of law, the appellee had assumed the risk of the injury which he received. The peril was not one of the ordinary dangers of his employment. It was extraordinary and exceptional, and existed because of the negligence of the master. Extraordinary perils arising from the negligence of the master are not assumed unless they are known and voluntarily encountered or are obvious, and expose the servant to dangers so imminent that an ordinarily prudent man would anticipate injury as so probable that in view of it he would not, even upon the order of the master, continue in the performance of his employment under like circumstances. (*Swift & Co.* v. *O'Neill,* 187 Ill. 337; *Chicago and Alton Railroad Co.* v. *House,* 172 id. 601; Wood on Master and Servant, sec. 387.) It appeared from the evidence that in the center of the south end of the building, at a distance of eleven feet from the floor, there was a window two feet and eleven inches square, and that there was no other window in the south half of the building; that the light admitted by the doors in the center of the warehouse was obstructed by the bales of hair piled up to the height of about fifteen feet; that the injury was received at about five o'clock in the afternoon of a cloudy day; that the south end of the warehouse was filled with dust from the bales of hair which had been thrown down, and that the overhanging bales at the top of the sixth row were some four feet or more above the small window which admitted the only light that could come into that por-

tion of the warehouse. The testimony of the appellee and of other witnesses was to the effect that one coming into the warehouse from without could scarcely distinguish any object until the eyes had adjusted themselves to the dusky light therein, and appellee and his fellow-workman, Heinlein, testified that they had not been in the warehouse long enough for their eyes to become adjusted to the light before the bales of hair fell upon the appellee. To what extent the conditions which constituted the danger to which appellee was exposed were apparent and open to his observation, required careful consideration of the facts and circumstances disclosed by the proof. His experience and knowledge arising therefrom, or the lack of experience and knowledge, were also important facts for the consideration of the jury. Whether the appellee knew of the danger, or whether it was so open and obvious that he should be chargeable with such knowledge, could not be determined as a matter of law. It was a question of fact for the jury.

The complaint preferred against instruction No. 3 given for the appellee is, that it seems to be based on an exposure of the appellee to a danger not usual in his employment, and that the instruction is "confusing, muddled and complex." The evidence fairly presented to the jury the question whether the danger to which the appellee was exposed and by which he was injured was incident to his employment or whether it was unusual or extraordinary. Phrases introduced in the instruction for the evident purpose of making it clear to the jury that no assumption as to the truth of any contested question of fact was intended, operated to detract, to some extent, from the clearness of expression, but the only effect was to lessen the force and directness of the charge and decrease its value to the cause of the appellee. The case for appellant was in no manner prejudiced thereby.

We do not think instruction No. 5 given in the same behalf is justly open to the criticism that it assumes that

the piles of bales of hair were not left in a reasonably safe condition by the assistant foreman. The phrases which were incorporated in instruction No. 3 for the purpose of negativing any imputation of an assumption of a matter of fact, and which provoked the contention that they served to render the instruction "confusing, complex and muddled," are not to be found in instruction No. 5, and the omission forms, in the main, the ground of complaint to it. It is suggested that the instruction proceeds upon the theory it was negligence to order the appellee to go back after the bales of hair, and is erroneous for the alleged reason there is no evidence that such order was negligently given. The order was given. The evidence disclosed facts and circumstances on which the appellee relied to constitute the act of giving the order to be negligence, and the instruction did no more than to submit the question to the jury to be decided from the evidence before them.

The objection to instructions Nos. 6, 7 and 8, that they were confused and involved in form, structure and language, is not entirely groundless. We are inclined to think the lack of clearness caused thereby may have tended to obscure the meaning of the instructions and to detract from their force, but we are unable to perceive that they were in any respect rendered misleading to the prejudice of the appellant company.

The criticism of instruction No. 8, so far as it relates to the doctrine of the assumption of risks by a servant, has been answered by what we have said hereinbefore relative to that principle of the law.

There is no error in the record that justifies the reversal of the judgment, and it must be and is affirmed.

*Judgment affirmed.*