(No. 33565.—

ROLLAND L. BRADLEY, Admr., *et al.,* Appellants, *vs.* LAW-RENCE FOX *et al.,* Appellees.

*Opinion filed September 23, 1955—Rehearing denied Nov 21, 1955.*

SHELBY E. HOOD and C. SIDNEY VAN DUZER, of Rock-. ford, for appellants.

DOWNEY & LAYNG, of Rockford, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Plaintiffs Rolland L. Bradley, administrator of the estate of Matilda Fox, deceased, and Alice E. Bradley, daughter of the decedent, have appealed directly to this court from a judgment of the circuit court of Winnebago County, dismissing their claims for damages for the unlawful killing of Matilda Fox by her husband, defendant Lawrence Fox, and for the imposition of a constructive trust on property formerly held in joint tenancy by the decedent and defendant Lawrence Fox.

The cause presents the issues of whether the daughter of a woman murdered by her husband can sue the latter for damages under the wrongful death statute, and whether a constructive trust can be imposed upon property formerly held in joint tenancy by a husband and wife where the husband killed his wife and then conveyed the property in trust to the attorney who defended him on the murder charge, as security for attorney's fees.

The operative facts are not in dispute. It appears from the pleadings that Lawrence Fox and Matilda Fox were married on May 6, 1949, and resided near Rockford, in Winnebago County. On April 18, 1950, they purchased with their individual funds the property in controversy, which they held in joint tenancy. Lawrence Fox murdered his wife on September 14, 1954, and three days later conveyed the premises, then valued at $20,000, to his attorney. Fox was convicted of murder on November 26, 1954, and sentenced to the State Penitentiary.

It further appears that at the time of her death, and for many years prior thereto, Matilda Fox had operated a beauty shop, and from those earnings contributed substantially to the support of plaintiff Alice E. Bradley, a daughter by a former marriage. For loss of this support, and for damages for the wrongful death of her mother, proceedings were instituted by plaintiff Alice E. Bradley, and plaintiff Rolland L. Bradley, as administrator of the estate of Matilda Fox. Plaintiffs also sought to establish a trust in the property formerly held in joint tenancy by Lawrence and Matilda Fox, and asserted a further claim for damages for breach of the implied contract between the joint tenants that neither would act to jeopardize the interest of the other.

The circuit court of Winnebago County allowed defendants' motion to dismiss the entire complaint, and rendered judgment against plaintiffs, from which they have appealed directly to this court, since a freehold is involved.

With reference to plaintiffs' claim for damages for the murder of Matilda Fox, this court has determined that under the Wrongful Death Act, (Ill. Rev. Stat. 1953, chap. 70, par. 2,) where a husband unlawfully kills his wife, the administrator of the estate of the wife may maintain an action against the husband, or his estate, for pecuniary loss suffered by the children through the unlawful killing of the mother. (*Welch* v. *Davis,* 410 Ill. 130.) This ruling moreover is in accordance with judicial opinion in other jurisdictions. 28 A.L.R. 2d 666, and cases cited; *Robinson* v. *Robinson,* 188 Ky. 49, 220 S.W. 1074; *Deposit Guaranty Bank & Trust Co.* v. *Nelson,* 212 Miss. 335, 54 So. 2d 476.

Defendant Fox argues, however, that since he, as the surviving spouse, was one of the class of beneficiaries under the Wrongful Death Act, his contributory negligence barred the other beneficiaries from recovering from him for his wrongful act. In support thereof defendants cite *Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38, involving

an automobile collision where the contributory negligence of the husband precluded him and the children from recovering damages for the death of his wife from a third-party tortfeasor.

The basis of the common law rule barring beneficiaries from recovering where one of the group has been contributorily negligent is that no man may recover for an injury to himself or his property which he himself was a material instrument in causing. (*Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38.) In the instant case, however, defendant Fox was not merely contributorily negligent as in the case cited by defendant, but was the sole wrongdoer, for it was he alone who caused the death of his wife. He cannot sue himself, and is therefore not within the class of beneficiaries entitled to recover under the Wrongful Death Act. To permit defendant Fox, as sole and principal tortfeasor, to plead his felonious conduct as a defense to taint the actions of persons entitled to sue him alone is to pervert the common-law concept of contributory negligence, and use it as a weapon to inflict wrong without peril, which will not be countenanced by this court. Therefore, it is evident that the circuit court erred in denying plaintiffs' claim for damages from defendant Fox for the wrongful death of Matilda Fox.

With reference to the disposition of the property formerly held in joint tenancy by defendant Lawrence Fox and Matilda Fox, plaintiffs claim that a constructive trust should be imposed thereon. They argue that inasmuch as defendant Fox acquired the sole legal title to the property by his felonious act, and since his conveyance to defendant Downey, who had full knowledge of the facts and circumstances, was for the purpose of delaying creditors, it is unconscionable for either of them to retain the beneficial interest, and therefore equity should impose a constructive trust.

Defendants, however, deny that there are any grounds for the imposition of such a constructive trust, and claim the issue has been determined in the case of *Welsh* v. *James,* 408 Ill. 18, where the court held that a husband who murdered his wife, while insane, was entitled, as the surviving joint tenant, to the entire property which he had held in joint tenancy with his deceased wife.

In determining whether this case is a binding precedent, this court has the power and the duty under the doctrine of *stare decisis* to re-examine the authorities and legal concepts invoked in that opinion (*Doggett* v. *North American Life Ins. Co. of Chicago,* 396 Ill. 354,) for the doctrine of *stare decisis* is a salutary but not an inflexible rule furthering the practical administration of justice. *U. S. Mortgage Trust Co.* v. *Ruggles,* 248 N.Y.S. 525, 533.

The decision in the *Welsh case* was predicated upon the legal fiction that defendant, as a joint tenant, was seized of the whole estate by virtue of the original grant and could not be divested therefrom by the imposition of a constructive trust, without violating the constitutional mandate against corruption of blood or forfeiture of estate (Ill. Const. 1870, art. II, sec. 11,) and upon the cases of *Wall* v. *Pfanschmidt,* 265 Ill. 180, and *Oleff* v. *Hodapp,* 129 Ohio St. 432, 195 N.E. 838.

In *Wall* v. *Pfanschmidt* the court held that under the Illinois statutes of descent, a murderer could inherit from his victim in the absence of any specific legislative prohibition. The court distinguished the cases construing insurance policy contracts to preclude a murderer of the insured from recovering under the insured's life insurance policy, and rejected the authorities which followed the early case of *Riggs* v. *Palmer,* 115 N.Y. 506, 23 N.E. 188, construing the statutes of descent to prohibit a murderer from inheriting from his victim. However, irrespective of the propriety of the *Wall* decision, the result decreed therein

was modified by statute in 1939 (Ill. Rev. Stat. 1939, chap. 3, par. 167,) so that at the time *Welsh* v. *James* was decided, the *Wall case* in no way represented the policy or law of this State respecting the devolution of property to a murderer from his victim.

Similarly, the Ohio case of *Oleff* v. *Hodapp,* relied upon by the court in *Welsh* v. *James,* was also predicated upon a status of the law which had since been modified. The majority, concurring, and dissenting opinions in the Ohio case qualified their conclusions by the fact that there was no statute indicating the policy of the State, since section 10503-17, comparable to the aforementioned Illinois statute, became effective subsequent to the death of the victim in that case.

Thus, inasmuch as the authorities relied upon in the *Welsh case* did not at the time constitute the law, and considering the fact that the court dismissed the contrary authorities summarily on the ground that the decisions for the most part emanated from inferior tribunals, it is incumbent upon this court to consider the issue anew, and evolve a proper rationale.

The issue of whether a murderer may acquire or increase his property rights by the fruits of his crime is not a novel legal question. It has arisen in three principal categories of cases: where the beneficiary or heir under a life insurance policy murders the assured to acquire the proceeds of the policy; or where a devisee or distributee feloniously kills the testator or intestate ancestor; and, as in the instant case, where one joint tenant murders the other and thus creates survivorship rights.

In the insurance cases the courts, practically with unanimity, construe the insurance policy in the light of the fundamental common-law maxim originating in English law that no man shall profit by his own wrong, and follow the approach of the early United States Supreme Court case of *N. Y. Mutual Life Insurance Co.* v. *Armstrong,* 117

U.S. 591, which held that a person who procured a policy upon the life of another, payable to himself, and then murdered the assured could not recover thereon. Mr. Justice Field stated: "It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he had feloniously taken." In conformity therewith, the Illinois courts in *Supreme Lodge Knights of Honor* v. *Menkhausen,* 209 Ill. 277, and *Illinois Bankers Life Assn.* v. *Collins,* 341 Ill. 548, construed insurance contracts as though the public policy and this common-law maxim were part of the contract, and denied recovery on the policy to the murderer or his heirs.

There has not been the same unanimity in the case law, however, with reference to the right of a devisee or distributee who feloniously kills his ancestor to inherit from the decedent in the absence of a statute. (30 Harv. L. Rev. 622; 39 A.L.R. 2d 498.) The New York courts have consistently followed the case of *Riggs* v. *Palmer,* 115 N.Y. 506, 22 N.E. 188, and have construed the statutes of descent to preclude the murderer from inheriting from his victim, *Ellerson* v. *Westcort,* 148 N.Y. 149, 42 N.E. 540; *Logan* v. *Whitley,* 114 N.Y.S. 255; *In re Sengillo's Est.* 134 N.Y.S. 2d 800,) on the ground that all laws, as well as contracts, may be controlled in their operation and effect by the fundamental maxims of the common law that no one shall be permitted to acquire property by his own crime or iniquity, which maxims, the court stated, were founded "in universal law administered by all civilized countries and have nowhere been superseded by statutes."

There is imposing precedent in conformity with the views of the New York court, wherein the courts deem it their duty to read the inheritance laws in conjunction with the common-law maxims incorporating moral and equitable principles. *Price* v. *Hitaffer,* 164 Md. 505, 165 Atl. 470; *Garwals* v. *Bankers Trust Co.* 251 Mich. 420, 232 N.W.

239; *Weaver* v. *Hollis,* 247 Ala. 57, 22 So. 2d 525; *Mc-Donald* v. *Mutual Life Ins. Co.* 178 Iowa 863, 160 N.W. 289; *In re Tyler's Est.* 140 Wash. 679, 250 Pac. 456; *Perry* v. *Strawbridge,* 209 Mo. 621, 108 S.W. 641.

The Illinois court, however, in *Wall* v. *Pfanschmidt,* as hereinbefore noted, felt constrained to ignore these maxims in construing the statutes of descent, and allowed a murderer to inherit from his victim on the theory that the statutes contain explicit provisions for the descent of property and for annulling wills, but did not preclude murderers from inheriting property, therefore the legal title which passed to the murderer must be deemed indefeasible.

The Illinois statute of descent, however, was modified in 1939, and provides in substance that a person who is convicted of the murder of another shall not inherit from the murdered person or acquire as surviving spouse any interest in the estate of the decedent by reason of the death. (Ill. Rev. Stat. 1939, 1953, chap. 3, par. 167.) Similar statutes have been enacted in most States, incorporating in effect the aforementioned common-law maxim as to the devolution of property. Wade, Acquisition of Property by Wilfully Killing Another—a Statutory Solution, 44 Harv. L. Rev. 715.

Defendants have questioned the constitutionality of the Illinois statute on the ground that it offends the constitutional prohibition against forfeiture of estate. Inasmuch as similar statutes in other States having identical constitutional mandates have been uniformly sustained on the theory that they do not deprive the murderer of his property, but merely prevent him from acquiring additional property in an unauthorized and unlawful way, (*Perry* v. *Strawbridge,* 209 Mo. 621, 108 S.W. 641; 6 A.L.R. 1808; 38 A.L.R. 2d 488,) there is ample authority for sustaining the validity of the Illinois Law, and defendant's argument must be rejected.

However, the validity of that statutory provision is not determinative of the issue in the instant case, but at most indicates the broad policy of the State to prohibit a murderer from enjoying by descent the fruits of his crime, since at the time of the commission of the murder defendant held, not merely an expectation of an inheritance, but a joint tenancy with the deceased, and his rights arise largely from the original instrument under which he had a right of survivorship, rather than by descent.

In this category of cases the courts have differed as to whether the murderer should be allowed his survivorship rights. Those courts which hold that he is entitled to the entire property as surviving joint tenant predicate their conclusion on the legal fiction incident to the concept of joint tenancy, whereby each tenant is deemed to hold the entire estate from the time of the original investiture, and reason that the murderer acquired no additional interest by virtue of the felonious destruction of his joint tenant, of which he can deprived. (*Beddingfield* v. *Estill*, 118 Tenn. 39, 100 S.W. 108; *Oleff* v. *Hodapp*, 129 Ohio St. 432, 195 N.E. 838; *Smith* v. *Greenburg*, 121 Colo. 417, 218 Pac. 2d 514; *Welsh* v. *James*, 408 Ill. 18.) Other courts, however, concerned with the equitable principles prohibiting a person from profiting from his own wrong, and with the realities of the situation, have abandoned the common-law fictions, and have either divested the killer of the entire estate (*Van Alstyne* v. *Tuffy*, 103 Misc. 455, 169 N.Y.S. 173; *In re Santourians Estate*, 125 Misc. 668, 212 N.Y.S. 116; *Bierbrauer* v. *Moran*, 244 App. Div. 87, 279 N.Y.S. 176; *Merrity* v. *Prudential Ins. Co.* 110 N.J.L. 414, 166 Atl. 335); or have deprived him of half the property (*Grose* v. *Holland*, 357 Mo. 874, 211 S.W. 2d 464); or have imposed a constructive trust on the entire estate held by the murderer for the benefit of the heirs of the victim (*Vesey* v. *Vesey*, 237 Minn. 295, 54 N.W. 2d 385;

*Colton* v. *Wade,* 32 Del. Ch. 122, 80 Atl. 2d 923; *Barnett* v. *Coney,* 224 Mo. A. 913, 27 S.W. 2d 757); or a constructive trust modified by a life interest in half the property (*Bryant* v. *Bryant,* 193 N.C. 372, 137 S.E. 188; *Neiman* v. *Hurff,* 11 N.J. 55, 93 Atl. 2d 345).

The imposition of a constructive trust in this class of cases has been urged by legal scholars (Ames, Lectures on Legal History, 310, 321, cited in *Neiman* v. *Hurff,* 11 N.J. 55, 93 Atl. 2d 345, 347; Bogert, Trusts and Trustees, 478 *et seq.,* cited in *Grose* v. *Holland,* 211 S.W. 2d 464, 466), and is advocated by the Restatement of Restitution. Section 188b thereof provides in substance that when there are two joint tenants, and one of them murders the other, the murderer takes by survivorship the whole legal interest in the property, but he can be compelled to hold the entire interest upon a constructive trust for the estate of his cotenant, except that he is entitled to one half the income for life.

From the foregoing analysis of the entire issue as considered in the related insurance policy and descent cases, and in the analogous joint tenancy cases, as well as by legal scholars and lawmakers, certain conclusions follow. Contracts and other instruments creating rights should properly be construed in the light of prevailing public policy evidenced in the statutes. (*Illinois Bankers Life Assn.* v. *Collins,* 341 Ill. 548; *Grose* v. *Holland,* 357 Mo. 874, 211 S.W. 2d 464.) The Illinois statute prohibiting the devolution of property to a convicted murderer from his victim, while not determinative of the rights of the parties in this situation, does evince a legislative policy to deny the convicted murderer the fruits of his crime. That policy would be thwarted by a blind adherence to the legal fiction that a joint tenant holds the entire property at the date of the original conveyance, and acquires no additional interest by virtue of the felonious death of his cotenant, since that rationale sanctions in effect the enhancement of

property rights through murder. For legal fictions cannot obscure the fact that before the murder defendant, as a joint tenant, had to share the profits of the property, and his right to complete ownership, unfettered by the interests of a joint tenant, was contingent upon surviving his wife; whereas, after, and because of, his felonious act that contingency was removed, and he became the sole owner of the property, no longer sharing the profits with any one nor fearing the loss of his interest. *Grose* v. *Holland,* 357 Mo. 874, 211 S.W. 2d 464.

These benefits to the murderer resulting from his felonious act have also been noted by Professor Bogert in his treatise on Trusts at page 478. We cannot disregard these realities and apply a legal fiction which operates to increase the estate of one who murders his joint tenant, as did the court in *Welsh* v. *James.*

The constructive trust concept, referred to as the "formula through which the conscience of equity finds expression" (*Beatty* v. *Guggenheim Exploration Co.* 225 N.Y. 380, 386, 122 N.E. 378, 380), has been invoked whenever the legal title to property has been obtained under circumstances which render it unconscionable for the holder to retain and enjoy the beneficial interest. The imposition of such a trust under the circumstances of the instant case, where the defendant has acquired the sole legal title to the entire property and thereby enhanced his property rights through the murder of his joint tenant, has approbation not only in the case law, the Restatement of Restitution, and in legal treatises, but is consistent with the legislative policy evidenced in section 15a (par. 167) of the Probate Act. Moreover, as tersely stated by Justice Cardozo, "The social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership." Cardozo, Nature of the Judicial Process, 43.

In joint tenancy the contract that the survivors will take the whole necessarily presupposes that the death of either will be in the natural course of events and that it will not be generated by either tenant murdering the other. One of the implied conditions of the contract is that neither party will acquire the interest of the other by murder. It is fundamental that four coexisting unities are necessary and requisite to the creation and continuance of a joint tenancy; namely, unity of interest, unity of title, unity of time, and unity of possession. Any act of a joint tenant which destroys any of these unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. (*Klouda* v. *Pechousek*, 414 Ill. 75, 79.) It is our opinion, therefore, that it would be unconscionable for defendant Fox, as murderer of his joint tenant, and for defendant Downey, as transferee with full knowledge of how Fox acquired the sole legal title to the property and of the fact that the conveyance was in fraud of creditors' claims, to retain and enjoy the beneficial interest in the property. It is our conclusion that Fox by his felonious act, destroyed all rights of survivorship and lawfully retained only the title to his undivided one-half interest in the property in dispute as a tenant in common with the heir-at-law of Matilda Fox, deceased.

Inasmuch as defendant Fox was at no time prior to the murder the sole legal owner of the entire estate, he is not being deprived of an estate enjoyed by him prior to the commission of the crime, hence there can be no violation of the constitutional prohibition against forfeiture. There can be no forfeiture of that which the murderer never had. *Price* v. *Hitaffer*, 164 Md. 505, 165 Atl. 470.

In so construing the rights of the parties to deny a murderer the fruits of his crime, this court is functioning, not as a "theological institution," as suggested in the Ohio case cited by defendants, but as a tribunal dedicated to the adjudication of law, for effecting justice is not a novel

role for the courts, nor one transcending the sphere of other institutions.

On the basis of our analysis, the judgment of the circuit court dismissing plaintiffs' complaint was in error, and the cause will be remanded with directions to reinstate the complaint and enter a judgment in conformity with the views expressed herein.

*Reversed and remanded, with directions.*