Charles Taylor and Bertha Taylor, Plaintiffs, Bertha Taylor, Plaintiff-Appellant, v. John Hancock Mutual Life Insurance Company, Defendant-Appellee.

Gen. No. 10,041.

Third District.

February 23, 1956.

Rehearing denied March 23, 1956.

Released for publication March 23, 1956.

HIBBS, P. J., dissenting.

John F. Regan, Jr., and Francis R. Wiley, both of Decatur, for plaintiff-appellant.

James S. Baldwin, and John W. Evans, both of Decatur, for defendant-appellee.

JUDGE REYNOLDS delivered the opinion of the court.

This is a suit to recover on an accident insurance policy, issued by the John Hancock Mutual Life Insurance Company covering one Frank Owen, deceased. The plaintiffs were Charles Taylor and Bertha Taylor, but the parties stipulated that Bertha Taylor was the named beneficiary. The policy was a Group Insurance Policy issued to Chambers, Bering, Quinlan Company, of Decatur, Illinois, covering its employees, against bodily injuries sustained solely through external, vio-

lent and accidental means, directly or independently of all other causes. Frank Owen was an employee of the Chambers, Bering, Quinlan Company, at the time of his death. The amount of the policy was based upon the hourly earnings of the employee, and in the case of Owen, was the maximum under the policy, or $2000 for death.

All the facts were stipulated, and the case was tried before a court without a jury. The death of Frank Owen came about as follows: One John Louis Owens, who was not related to Frank Owen, owned a home in Decatur, Illinois. Some time before the death of Frank Owen, John Louis Owens and Frank Owen had agreed to burn the home of John Louis Owens, for the insurance. Later another man, Logan Brooks became one of the plotters, and the three of them were implicated in the arson plot. On the night of Frank Owen's death, the three of them carried two five-gallon cans of gasoline into the house and poured it over the floors with the intention of igniting it and burning the house. After the gasoline was spread through the house, Frank Owen asked John Louis Owens if he could have some of the bed spreads in the home. Upon being told he could have the bed spreads, he went back into the house to get them. There was a gas heater in the house with a pilot light burning. Whether or not the gasoline caught fire from the pilot light or from some other cause, is not known, but while Frank Owen was in the home to take some of the bed spreads, the gasoline caught afire and Frank Owen was trapped in the home and burned to death.

The insurance company denied liability, and suit was brought. The trial court found for the defendant, and entered judgment in favor of the defendant. From that judgment the plaintiffs appeal to this court.

The question in this case is whether or not the deceased, Frank Owen, came to his death as a result of

bodily injuries, sustained solely through external, violent and accidental means, directly and independently of all other causes, while an employee of Chambers, Bering, Quinlan Company. That is the coverage of the policy. With the facts undisputed, this question can be narrowed. He came to his death as a result of bodily injuries. These injuries were sustained through external and violent means. He was an employee at the time of his death of Chambers, Bering, Quinlan Company. These matters being admitted by all parties, the question remains, "did he come to his death, solely through accidental means, directly and independently of all other causes."

The insurance company takes the position that the deceased was engaged in an unlawful act, and that the insured, having come to his death by and through means which were wilful, voluntary, intentional and designedly employed by him in committing the crime of arson, his death was not "as a result of bodily injuries sustained solely through external, violent and accidental means, directly and independently of all other causes." The plaintiffs contend that even though the insured was engaged in an unlawful act, that that would not defeat the policy. That the fire was the sole and proximate cause of his death and that the conditions which created the fire, namely the spreading of the gasoline, and the presence of the pilot light, was not the immediate cause of the death, but that the fire itself, which apparently was accidently started, was an accident, and therefore the company was liable.

The theory of the insurance company would seem to be that the whole transaction, the plot to burn the house, the carrying in of the gasoline, the spreading of the gasoline about the house, and the subsequent fire, all were part of an illegal act and must be treated as a single happening. In a way this position is that the deceased, by his actions caused his own death and

that the death because of the spreading of the gasoline, with the intent to burn the house, was in effect, with the design and aid of the deceased. The intention to pilfer and burn was there. But it could not be seriously contended that the deceased intended to burn himself to death. That part was accidental. While he was pilfering the bed spreads, the fire broke out unexpectedly and trapped him in the burning house. The mere fact that he and the others intended to burn the house later, would not alter the facts that the fire started before he or they intended it should. No person would make all preparations to incinerate himself, unless mentally unbalanced, and there is nothing here to indicate an unbalanced mind. He was a criminal engaged in a criminal act, but not a suicide. Unless the preparations for the burning of the house can be considered as all part of the one happening, the death of Frank Owen must be considered an accident, and not part of the plans of the conspirators. The very fact that he was engaged in taking the bed spreads, would negative the theory of suicide. He was to share in the insurance money, and thought to add a little more by taking the bed articles. While his motives were intentional, mercenary and criminal, he intended to profit, not lose his life.

The defendant cites the case of Wayne v. Travelers Ins. Co., 220 Ill. App. 493, where the court laid down the rule that "where the means are voluntary and intelligent and the act performed without error, even though death should unexpectedly result, death is not effected by accidental means." In this case, the court also says, quoting from the case of Riley v. Interstate Business Men's Acc. Ass'n (Iowa), 152 N. W. 617: "Thus it is apparent that to entitle one to recover, under a policy like the one in question, it is not sufficient to show that the death was accidental. Death is the result of some precedent act or condition. It

is traceable to some cause. It is not sufficient, to make the *cause accidental,* that it appear that the resulting death was unanticipated, unforeseen, and not expected as a result of the act done. It must appear that that which happened to produce the result happened through accident, in order that the proper foundation may be laid for the recovery." In considering that case, unless the theory of the defendant that it was all one act, is adhered to, it must be admitted that the unexpected and premature starting of the fire was accidental.

The case of Hutton v. States Acc. Ins. Co., 267 Ill. 267, is cited by the defendant. That case was one where a person started a fight, and had his leg broken in the fight. The court held there that an effect which is the natural and probable consequences of an act or course of action cannot be said to be produced by accidental means. That is materially different from the case here. In that case, the person starting the fight voluntarily and intentionally placed himself in a position where he might expect to be injured. There the plaintiff knew when he started the fight that he might be injured. Here, the deceased, while placing the inflammable materials in the house, would have not been injured except for the unexpected breaking out of the fire while he was still in the house. The deceased here had no intention of being in the house when the fire started. His plain intentions were to get the bed clothing and be out when the fire was started. The Hutton case cites two cases, one where the insured, a man named Lovelace, attempted to eject a man from the office of a hotel, using only his hands to eject the man. The man drew a pistol and shot him. The court in that case held that the shooting of Lovelace was an accident and not a risk voluntarily assumed, since he attempted to eject the other person without knowing that he was armed. In the other case, both men were

335

armed, and became involved in a quarrel, and the insured was shot. There the court held that the shooting of the insured was not occasioned by accidental means, for the reason that an accident may be said to be an unforeseen and unexpected event of which the insured's own misconduct is not the natural or proximate cause.

This same rule is laid down in the case of Cory v. Woodmen Acc. Co., 333 Ill. 175. In that case, the court held that death from shooting was not accidental, where the insured was shot while he was the aggressor in a fight and made advances toward his adversary after the latter had warned him he would be shot if he did not keep away, as under such circumstances it cannot be said that the shooting was unforeseen and the result flowing therefrom could not be held to be due to an accidental cause.

The defendant company claims that the death of Frank Owen was caused by his own criminal act. A number of cases from other jurisdictions are cited, but only one Illinois case. That is the case of Kneedler v. Bankers' Acc. Ass'n, 188 Ill. App. 293. In that case it was stipulated that the plaintiff received an accidental injury while engaged in and assisting in cockfighting. The court in that case said: "We have held that the mere fact that a person insured against accidental injury received such an injury while in the commission of an unlawful act does not necessarily preclude him from recovering on his policy against the company issuing the same."

In considering a case of this kind, the court must inevitably consider the "proximate cause." The cause of an injury has been defined by Illinois courts, as "that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act." Phillabaum v. Lake Erie & W. R. Co., 315 Ill. 131. In that case the court said: "An act may furnish the occasion for another act, and

such second act may be the cause of an injury without the first act in any manner being a contributing cause of such injury. The second act may be the result of some intervening cause in no manner flowing from the original act but which cause is given an opportunity to operate through the occasion furnished by such original act."

In the case of Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, the court there in defining "proximate cause" said: "The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as the result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which might result from his act. If the negligence does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury. (Hartnett v. Boston Store, 265 Ill. 331; Chicago Hair and Bristle Co. v. Mueller, 203 Ill. 558.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (Pullman Palace Car Co. v. Laack, 143 Ill. 242; Seith v. Commonwealth Electric Co., 241 Ill. 252.) One act may furnish the occasion for another act, and such second act may be the cause of an injury without the first act in any manner being a contributing cause of such injury. The second act may be the result of some intervening cause in no manner flowing from the original act but which cause is given an opportunity to operate through the occasion furnished by such original act. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for

337

the causal agencies to act. Phillabaum v. Lake Erie & Western Railroad Co. 315 Ill. 131."

This doctrine is affirmed in Briske v. Village of Burnham, 379 Ill. 193, where the court says: "If a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. (Citing authorities.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes a direct and immediate cause of the injury."

█ █ Following the doctrine of the cases cited, this court must hold that the fire was the proximate cause of the death of Frank Owen. The plot to burn the house, the carrying in and spreading the gasoline about the house created the condition, but the fire caused the death, and the fire was an accident in that it occurred before the deceased or his fellow arsonists intended for it to occur. As was held in the case of United States Mut. Acc. Ass'n v. Barry, 131 U. S. 100, if an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact occurs, such unintended result is deemed to be caused by accidental means. The fire was intended, but not at that time. It was not the rational and probable consequences of the intended act, but was another result, unintentional and unintended.

The judgment of the County Court of Macon County is reversed.

Reversed.

HIBBS, P. J., dissenting.

The policy in this case provided coverage for an injury or death "suffered as the result of bodily injuries sustained solely through external, violent and accidental means independently of all other causes." The injury and death of the insured resulted solely from the fire and explosion of the gasoline he himself spread and feloniously intended should be ignited to destroy the dwelling, and which was ignited and destroyed it. The resulting death of the insured cannot be said to have been either caused "solely . . . by accidental means, or independently of all other causes."

It may be conceded the deceased in the commission of the unlawful act did not intend to cause his death but did intend to survive and collect his share of the insurance. However, his act of going into the dwelling after he had assisted in spreading the gasoline to remove some bed clothes for himself before the building was ignited was so inseparably connected with the arson plan and conspiracy in conduct and timing that there is no occasion for the discussion of proximate cause. The intendments of our criminal code are such that to permit a recovery under the facts in this cause would be contrary to the public policy of the State. (Bradley v. Fox, 7 Ill.2d 106, 23 A.L.R.2d, p. 1106.)

Although the beneficiary under this policy is guiltless, I do not believe she should profit by reason of the fact that the policy holder lost his life while engaged in a felonious offense contrary to the criminal statutes of this State.

I would affirm the judgment of the trial court.