*In re* ESTATE OF ADELLA G. VALLERIUS, Deceased, *et al.* (Peter M. Vallerius *et al.*, Petitioners-Appellees, v. Douglas White *et al.*, Respondents-Appellants).

Fifth District   No. 5—92—0473

Opinion filed February 28, 1994.

Gerald W. Bassett, of Bassett Law Office, P.C., of Wood River, for appellants Russell Meyer and Craig White.

Nolan Lipsky, of Petersburg, for appellant Douglas White.

D.A. McGrady, Sr., of McGrady & McGrady, of Gillespie, for appellees Peter M. Vallerius, Glenna F. Giacoletto, Lawrence Joe Davis, and Iione V. Henry.

John D. Bauman, of Hinshaw & Culbertson, of Belleville, for appellee Duffy Joe Vallerius.

No brief filed for appellees Gail Kadavi and Terrie L. Illies.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The issue in this case is whether a person who intentionally and unjustifiably participates in the murder of another can indirectly inherit the murder victim's estate from another ancestor. We hold that he cannot, under the facts of this case as they apply to section 2—6 of the Probate Act of 1975 (the Act). 755 ILCS 5/2—6 (West 1992).

The facts of this case, as they are relevant to the issue herein, are as follows: On December 22, 1987, Douglas White murdered his grandmother, Adella G. Vallerius. On the same day, at the same time, and in the same house, Douglas' brother, Craig White, murdered his grandmother's friend, Carroll Pieper. Douglas was convicted of Mrs. Vallerius' murder. Craig entered a negotiated plea of guilty to, and was convicted of, the murder of Carroll Pieper. Craig testified for the State in Douglas' murder trial as part of his negotiated guilty plea.

Mrs. Vallerius died testate, naming Douglas and Craig as her sole beneficiaries. Mrs. Vallerius' only heir was her daughter, Renie White, Douglas and Craig's mother. On January 11, 1988, Mrs. Vallerius' will was admitted to probate. In compliance with the terms of the will, Douglas White and Dennis Johnson were appointed legal representatives of Mrs. Vallerius' estate. About $2^{1}/2$ months after Mrs. Vallerius was murdered, on March 7, 1988, Renie White died, intestate, of natural causes. She left as her only heirs her two sons, Douglas and Craig.

On March 12, 1990, the appellees, Peter M. Vallerius, Glenna F. Giacoletto, Lawrence Joe Davis, Helen L. Vallerius, Gail Kadavi, Iione V. Henry, Janis Murray, Terrie L. Illies, and Duffy Joe Vallerius, filed a petition to intervene and to consolidate the estates of Mrs. Vallerius and Renie White and an "Objection to Distribution" in the estate of Mrs. Vallerius, wherein they alleged that "Douglas Keith White and Craig Steven White, having intentionally and unjustifiably caused the death of Adella G. Vallerius[,] cannot lawfully receive any property, benefit or other interest" by reason of her death, through the estate of Mrs. Vallerius or through the estate of Renie White. Over Douglas' objection, the court granted the petition to intervene and consolidated the three cases.

After an evidentiary hearing on the appellees' objection to distribution, the court entered an order granting the appellees' request. The trial court found that the issue in the case was whether Douglas and Craig could receive any property or interest by reason of the death of Mrs. Vallerius, whether through her estate or the estate of Renie White. The court determined that, under both statute and

common law, the public policy of Illinois has long been to prevent wrongdoers from profiting from intentionally committed wrongful acts. (*State Farm Life Insurance Co. v. Davidson* (1986), 144 Ill. App. 3d 1049, 495 N.E.2d 520.) The court further found that the petitioner-objectors (appellees herein) had sustained their burden of proof, by clear and convincing evidence, that Douglas and Craig intentionally and unjustifiably caused the death of their grandmother, Mrs. Vallerius. The evidence relied upon by the court in making this determination "consisted of, but was not limited to: (a) The transcript of telephone eavesdrop between Craig White and Lynn Holowitch; (b) The video taped [*sic*] statement of Craig White to the police; [and] (c) Craig White's testimony at the jury trial of Doug White."

Although appellants were responsible for providing us with copies of any of the exhibits listed above as relied upon by the trial court and they failed to do so, we take judicial notice of the criminal case affirming the conviction of Douglas White, *People v. White* (1991), 209 Ill. App. 3d 844, 567 N.E.2d 1368, wherein these items are described. It is clear from reading the *White* case that the evidence relied upon by the court directly implicates Craig in the planning and commission of the murder of both Mrs. Vallerius and Carroll Pieper. *People v. White* (1991), 209 Ill. App. 3d 844, 567 N.E.2d 1368.

The court ordered that Douglas and Craig were prohibited from obtaining any property, benefit, or other interest by reason of the death of Mrs. Vallerius, "in any capacity and under any circumstances." The court further ordered as follows:

> "The Estate of Adella Vallerius, and all property, benefit and interest therefrom, must pass as if Douglas White and Craig White had died before the decedent, Adella Valerius. *** It follows that Douglas White and Craig White must not be allowed to take Adella Vallerius' property through the estate of their mother, Renee [*sic*] White. Illinois law requires that this Court treat Douglas White and Craig White as having died prior to Adella Vallerius. Logically, this Court must also treat Douglas and Craig as having predeceased their mother, Renee [*sic*] White. Any other interpretation of the law would emasculate section 2—6 of the Probate Act. *** The obvious intent of the Illinois legislature was that persons like Douglas and Craig White must not profit from their brutal murder of their grandmother."

The court ordered that the appellees were the heirs of Mrs. Vallerius and divided her estate according to their respective interests. Finally, the court ordered that Douglas and Craig "shall return to the Estate of Adella G. Vallerius any property, benefit or interest which they may have received by reason of the death of Adella Vallerius, for im-

mediate distribution to the [appellees] in accordance with their respective interests." (We do not know if the trial court intended to include the return of the attorney fees paid on behalf of Craig and Douglas by the estate of Renie White from the funds received from the estate of Mrs. Vallerius. See *In re Estate of Braun* (1991), 222 Ill. App. 3d 178, 583 N.E.2d 633.)

On July 10, 1992, Craig White and Russell Meyer, as administrator of the estate of Renie White, filed a notice of appeal of the trial court's June 23, 1992, order. On July 23, 1992, Douglas White filed a notice of appeal of the same order. Only Craig and the administrator of Renie White's estate (hereinafter the appellants) filed a brief in this appeal. Douglas did not file any brief.

The appellants first argue that Craig cannot be held accountable under the Act for Douglas' murder of Mrs. Vallerius, since Craig did not actually swing the sledgehammer that killed Mrs. Vallerius but only killed Carroll Pieper after Douglas killed Mrs. Vallerius. Appellants argue that even though Craig "may have borne criminal responsibility for the actions of Douglas White under the criminal accountability statute," Craig cannot be denied his right of inheritance from his mother, because section 2—6 of the Act does not include specific provisions for the accountability for a murder committed by another person.

Appellants cite only cases decided before 1983 in support of their argument. The statute was amended in 1983. (755 ILCS 5/2—6 (West 1992).) The cases appellants cite apply only to the statute as it existed before the 1983 amendment. Therefore, the cases cited by appellants in support of this argument are irrelevant. However, because this is apparently an issue of first impression in Illinois, we will consider appellants' argument, although we find it to be meritless.

■ Section 2—6 of the Act provides, in pertinent part, as follows:

"A person who intentionally and unjustifiably *causes* the death of another shall not receive any property, benefit, or other interest by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or *in any other capacity* and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, *or any other circumstance. The property, benefit, or other interest shall pass as if the person causing the death died before the decedent* ***." (Emphasis added.) (755 ILCS 5/2—6 (West 1992).)

The plain words of the statute compel us to hold that Craig White cannot be permitted to receive any benefit by reason of the death of Mrs. Vallerius, whether through her estate directly or indirectly through the estate of her daughter, Renie White. If we were to allow

Craig White to receive any property, benefit, or interest from the estate of Renie White, our decision would directly contravene the statute's unambiguous mandate that he not receive any property by reason of his grandmother's death in any capacity or by any circumstance, because Craig White is one who caused the death of Mrs. Vallerius.

■ The history of this statute bears out our reasoning. Before 1939, a murderer was not prohibited from inheriting from his victim, because the laws of descent and distribution of probate estates did not specifically prevent this from happening. (*Wall v. Pfanschmidt* (1914), 265 Ill. 180, 106 N.E. 785.) However, in 1939, the former version of the current statute was enacted, providing that a "person who is convicted of the murder of another shall not inherit from the murdered person or acquire as surviving spouse or otherwise *** by reason of the death," and the murderer was to be treated as if he had died before the victim for purposes of descent and distribution. Ill. Rev. Stat. 1981, ch. 110½, par. 2—6.

Even this version of the statute proved to be too narrow, and the legislature enacted the current version of the statute in 1983. Obviously, the statute as amended in 1983 is, by design, much broader and more comprehensive than the 1939 statute. The legislature amended the statute by deleting the requirement that one had to be convicted of murder before the restriction against inheriting from the victim would apply and mandated instead that if a person "intentionally and unjustifiably *causes*" the death of another, he shall not receive any property, benefit or other interest. The word "causes," which is defined as "anything producing an effect or result" (Webster's New World Dictionary 223 (3d College ed. 1988)), encompasses the actions of one participating in the intentional and unjustifiable death of another, whether as an aider and abettor, a coconspirator, or one who hires another to kill the decedent.

We cannot construe the broad language of the statute in so technical and rigid a fashion that its application violates longstanding public policy or serves to unjustly increase the estate of one who participates in murder. (*Bradley v. Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699.) Furthermore, the catchall words, "in any other capacity" and "any other circumstance," are intended to apply to unique factual circumstances such as this. Statutes, by their very nature, must apply to a broad range of factual scenarios. Moreover, the legislature certainly cannot be expected to prophesy and list in advance the infinite ways in which a statute such as this may need to be applied in the future. We will not read into the statute words of limitation that are not there, particularly since the limitation espoused by appellants would be directly contrary to the strong pub-

lic policy that murderers should be denied the fruits of their crimes. *Bradley v. Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699.

We note, as the trial court pointed out in its order, that the supreme court has ruled, prior to the 1983 amendment, that a criminal conviction of murder is not necessary for the public policy against wrongdoers profiting from their wrongful deeds to apply. *State Farm Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 363 N.E.2d 785.

Appellants also argue that section 2—6 does not preclude a murderer from inheriting property from a person other than the victim. Section 2—6 is written in such broad sweeping terms, however, that it is the clear intent of the legislature that the murderer not receive the victim's property in any capacity or under any circumstances. The fact that there is an intervening estate should not expurgate the wrong of the murderer or thwart the intent of the legislature that the murderer not profit by his wrong.

Another reason that appellants' argument cannot stand is that, for all legal purposes connected with his grandmother's estate, Craig predeceased Mrs. Vallerius. Renie White died 2½ months after Mrs. Vallerius' death. The corpus of Renie White's estate was funded directly from her inheritance from Mrs. Vallerius. By the time Renie White died and inherited from her mother, Craig White was already legally dead. The trial court was correct in ordering that neither Douglas nor Craig could obtain any property, benefit, or other interest by reason of the death of Adella Vallerius, in any capacity or under any circumstances that were directly traceable to the victim's estate.

Appellants make one final argument against the trial court's ruling. This argument is based upon the ancient theory of "corruption of the blood." Since Craig and Douglas were not the owners of Mrs. Vallerius' estate prior to the murder, there cannot be any violation of the constitutional prohibition against forfeiture of property. "There can be no forfeiture of that which the murderer never had." *Bradley v. Fox* (1955), 7 Ill. 2d 106, 118, 129 N.E.2d 699, 706.

Furthermore, the order does not preclude Craig or Douglas from inheriting property that was their mother's before her death and that did not come to her through the estate of Mrs. Vallerius but only prohibits them from inheriting the estate of Mrs. Vallerius indirectly through their mother's estate.

For all of the reasons stated, we affirm the ruling of the trial court.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.