Betty Wilson, Plaintiff-Appellee, v. Board of Trustees
of the State Universities Retirement System, a Pub-
lic Corporation, Organized and Existing Under and
By Virtue of the Laws of the State of Illinois, De-
fendant-Appellant.

Gen. No. 10,986.

Fourth District.

April 10, 1969.

Rubin G. Cohn, of Champaign, for appellant.

Burt Greaves, of Champaign (Burt Greaves, of coun-
sel), for appellee.

SMITH, J.

■ The single issue is whether a widow, convicted
of the voluntary manslaughter of her husband, may be

a beneficiary under the State Universities Retirement System in which her husband, at the time of his death, was a participant. The Board of Trustees held that she wasn't. The trial court on administrative review held that she was. We hold that she wasn't.

We reviewed this claimant's conviction for voluntary manslaughter. 79 Ill App2d 200, 223 NE2d 472. The widow was charged with murder, voluntary manslaughter and involuntary manslaughter, but was convicted of voluntary manslaughter only in a bench trial. This amounts to a finding of not guilty as to murder. It is the position of the claimant that Ill Rev Stats 1967, c 108½, § 15–149, of the State Universities Retirement System requires that the board "shall apply such law as would be applied by the courts of this State in determining the devolution of intestate property" in ascertaining whether or not a beneficiary claimant is the widow, widower, child, or parent of a participant or annuitant. It thus follows, she says, that Ill Rev Stats 1967, c 3, § 15a and § 49a, which prohibits, respectively, one convicted of a murder from inheriting as an heir to his victim and voids a legacy or devise to one convicted of the murder of his testator does not apply to a conviction for voluntary manslaughter. The statute is unambiguous, requires no construction, and thus disqualifies a claimant otherwise qualified only if he or she is convicted of the murder of the pension participant or annuitant. Thus, having been acquitted of murder, the claimant asserts and the trial court held that she was not barred from the benefit of the State Universities Retirement Act by any proper construction of that Act.

■ We have noted that § 15–149 of the Retirement Act above-cited requires a board to "apply such law as would be applied . . . in determining the devolution of intestate property." The plaintiff would apparently confine this language to the statutory law even though by the very terms of the Act itself reference is made to

211

"law . . . applied by the courts." It would seem scarcely debatable that such language encompasses decisional as well as statutory law.

Under § 15–187, it is provided "None of the benefits herein provided for shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as an employee." Under pension plans, the participant is the primary beneficiary and those designated by him in the event of his death are in reality secondary beneficiaries. The statute thus disqualifies a participant who is convicted of *any* felony arising out of or in connection with his service as an employee under the Act. To construe or apply the Act as the plaintiff contends is to give the secondary beneficiary a treatment more favorable than the participant himself. Conviction of *any* felony in connection with the work that brings him under the Act disqualifies him. We see no reasonable justification for permitting a secondary beneficiary to benefit when the status as a beneficiary is brought about by *intentional* killing of the participant through either murder or voluntary manslaughter. Conviction of either should bar a claimant.

It should be observed that § 15–149 makes no determination as to whether a beneficiary is or is not entitled to participate in the benefits under the Act. It states only that "in determining whether a benefit applicant under this Article is the widow, widower, child, or parent of a participant or annuitant, the board shall apply such law as would be applied by the courts of this State in determining the devolution of intestate property." It strikes us that the reference to the devolution of intestate property means that the status as a widow, widower, child, or parent shall be determined under the Retirement Act in the same manner as it is determined under the laws of descent. This, in our judgment, refers to such matters as common-law marriage, simultaneous death of husband and wife, illegitimacy, posthumous children, divorce,

adopted children and adoptive parents. Murder and felonious killings have nothing to do either with the creation of the status or its destruction. It is the fact of death and not the method or means of death which changes a lawful husband or wife into a widower or widow. It seems quite clear that § 15–149 should be restricted to the definitional status of widow, widower, child, or parent and does not inferentially or otherwise incorporate the whole of the Descent Act into the Retirement Act.

In Bradley v. Fox, 7 Ill2d 106, 129 NE2d 699, our Supreme Court discusses the public policy of common-law maxim that no man shall profit by his own wrong or by his own crime. It is there made clear that one who murders his benefactor cannot acquire or increase his property rights by such action. This philosophy applies where the beneficiary or heir under a life insurance policy murders the assured and thus acquires the proceeds of the policy, where a devisee or legatee feloniously kills his testator, where a person murders his intestate ancestor, and where one joint-tenant murders his other joint-tenant and thus accelerates survivorship rights. This case also squarely holds that such public policy, be it common-law, statutory, or by judicial construction, does not violate constitutional mandates against forfeiture of property or corruption of blood. One cannot forfeit that which he is precluded from having. It is not even debatable in our judgment that if the claimant in this case had been convicted of murder she would have been barred from recovery. This is not so because of any provision of the Descent Act or reference to that Act, but because the public policy of this State so directs.

Turning back the calendar, we find that the Supreme Court in Wall v. Pfanschmidt, 265 Ill 180, 106 NE 785, took the position that since our statute of descent superseded the common law on the devolution of property and since it did not provide for a bar to inheritance where an

213

ancestor or heir killed his testator or intestate the court could not write into the statute such a bar. That philosophy applied to a construction of the Retirement Act we now consider would require the conclusion that since there is no prohibition which specifically forbids one who is convicted of voluntary manslaughter from becoming a beneficiary, there is no bar to recovery. However, in 1939, the legislature amended our Probate Act by the addition of § 15a and § 49a and thus statutorily reiterated the common-law and it applies to one convicted of murder in the statute on the devolution of property. Where, therefore, our courts have undertaken to remove, destroy, or ignore the common-law "innocent suitor" doctrine, the legislature has by statute superseded the pronouncement. We thus conclude that silence in both the statute of descent and the Retirement Act as to the effect of a voluntary manslaughter conviction can in no sense be construed as suggesting recovery in this case in the face of the common-law maxim. Indeed many "courts reason that such maxims constitute a rule of public policy which the legislature in the enactment of statutes of descent and distribution had no intention of abrogating, and that the interpretation of the law as precluding a person who feloniously kills his ancestor from succeeding to his victim's estate is but an expression of the legislative intent rather than an abrogation of the statutes by judicial construction." 39 ALR2d, § 6, p 488. In the face of this history, we think it would be a fracturing of present public policy not to bar as a claimant one convicted of voluntary manslaughter. To permit a claimant to benefit under a public retirement plan when such claimant has been convicted of the unlawful, intentional killing of the person through whom the benefits are claimed without a reasonable belief in the necessity of such killing is, we think, not only to permit one to benefit by his or her own wrong, but is fundamental

injustice. There is a fundamental and vital moral difference between an intentional killing through murder or voluntary manslaughter and other types of homicides. No statute specifically bars this result nor does any sound public policy preclude it. Indeed, it commands it.

Accordingly, the judgment of the circuit court is reversed and this cause is remanded to that court with directions to enter an appropriate judgment in conformity with the views herein expressed.

Reversed and remanded with directions.

TRAPP, P. J. and CRAVEN, J., concur.