*In re* ESTATE OF ELIJAH MOSES, Deceased—(JOHN BURTON, Petitioner-Appellant, Cross-Appellee, *v.* FRANK MOSES, Respondent-Appellee, Cross-Appellant.)

(No. 56687;

First District (5th Division)—June 15, 1973.

138

Joseph and Friedman and Orlikoff, Prins, Flamm & Susman, both of Chicago, (Jack Joseph and Arthur T. Susman, of counsel,) for appellant.

Nathaniel R. Howse, of Chicago, for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal and cross appeal from portions of an order entered on August 26, 1971, in probate proceedings.

Elijah Moses died in 1952 and his will was admitted to probate in 1953. It provided, *inter alia,* as follows:

> "All my real and personal property to my wife, SALLY to have and hold for her natural life. EXCEPT-That my son FRANK, shall have one room in my house at 1906 Asbury Avenue as his home during the life time of my wife, SALLY. And that my son, FRANK, shall receive the rents from the WEST room in the basement of said house beginning July 15, 1955.
>
> THIRD-At the death of my wife, SALLY all my real property shall vest in my son, FRANK: PROVIDED That he has lawful issue. If he does not then he shall have the said realty for his natural life only.
>
> FOURTH-If my son FRANK dies without issue all my real property shall vest in my nearest blood relative and the nearest blood relative of my deceased wife, LOUISE BURTON MOSES. One-half share to each of our respective heirs."

In 1954 Frank Moses, the son of Elijah by a prior marriage, murdered Sally, his stepmother, for which he was convicted in 1955 and served thirteen years of his sentence.

John Burton, the son of Sally by a prior marriage, was the executor of Elijah's estate and after Sally's death was the administrator of her estate. In 1958 an inventory was approved in Elijah's estate listing his home as the sole asset. In 1959, after finding that all interested parties were properly notified, including the heirs of Elijah and Louise Burton Moses, the court ordered the sale of the home to meet expenses and

costs of administration. The net proceeds of the sale amounting to $10,448 were the sole assets of Elijah's estate.

Among the orders entered, the following have particular significance:

*Order of July 23, 1962*—The court denied a petition of Burton, as executor, to (a) extinguish the interest of Frank Moses because he had murdered Sally, and (b) to ascertain the value of Sally's life interest at the time of her death. The court also ordered the executor to file within 30 days a petition for distribution requesting the court for construction of the will at the time of Sally's death.

*Order of June 24, 1968*—The court entered an order sustaining or denying each of the 19 objections filed by Frank Moses to a final account, which included a proposed final distribution of specific amounts to (1) the estate of Sally Moses for the value of her life interest, (2) Frank Moses for the value of his life interest, and (3) the Clerk of the Probate Court for the undetermined remainder.

In objection 18, which was sustained, Moses contended that any claim by Sally's estate was *res judicata* because the court had, in its order of July 23, 1962, denied a petition to determine the value of Sally's life estate at the time of her death and to extinguish the interest of Frank Moses. In objection 19, which was also sustained, he disputed any distribution to the undetermined remainder maintaining that under the proper construction of the will that he (Frank Moses) was entitled to the entire balance. In his reply to objection 18 the executor contended that because Frank Moses murdered Sally, the amount he receives should be subject to the value of Sally's life estate at the time of her death and in his reply to objection 19 he challenged Frank Moses' claim to the remainder because he did not have lawful issue and the executor again raised the question of the proper construction of the will.

The court also sustained Frank Moses' objection 8 in which he asked for interest under Section 308 of the Probate Act and the executor was ordered to be charged 10% per annum from August 1, 1959, on the proceeds from the sale of the home.

The executor was also ordered to prepare and submit to the court a corrected final accounting within 10 days.

*Order of January 24, 1969*—On its own motion the court entered an order removing Burton as executor of Elijah Moses' estate and appointing James L. O'Keefe, the public administrator, to act.

*Order of May 5, 1969*—The court ruled on a petition of Burton and in its order denied the following requests:

1. to construe the will,
2. to vacate the order removing him as executor,
3. to vacate or modify the order of June 24, 1968, and

4. to modify the prior orders to provide for immediate appeal.

No specific findings were made and no reasons were given for the denial of any request.

The court also ordered Burton to file within 20 days an amended final account pursuant to the order of June 24, 1968.

*Order of November 18, 1969*—The court ruled on a petition filed by Burton to vacate the order of June 24, 1968. It was supported by a memorandum of law which included a reference to a hearing on July 28, 1969 concerning a motion of Burton for instructions as to the distribution of funds held by him and accounted for in an amended final account filed on May 26, 1969. It appears from the memorandum that at the hearing on July 28, 1969, there was a suggestion that the motion for instructions be considered a petition under section 72 of the Civil Practice Act to vacate the order of June 24, 1968. It was indicated that the court permitted Burton to file a section 72 petition. However, if one was filed, it is not in the record nor have we found any order concerning a ruling on any such petition.

Moses moved to strike the petition to vacate because (a) Burton was removed as executor and, being neither an heir nor a creditor, he had no right to present the motion and (b) that the June 24, 1968 order was final and conclusive. In its order of November 18, 1969, the court:

1. denied the motion to vacate the order of June 24, 1968,

2. denied the motion for instructions, and

3. sustained the motion of Moses to strike the petition.

Again, no specific findings were made.

Thereafter Burton filed a notice of appeal from the order of November 18, 1969, and subsequently he moved for a dismissal of this appeal "for the reason that no appealable order has as yet been entered in the trial court." This court granted the motion and the record here discloses there was no finding as to whether the order of November 18, 1969, was or was not final and appealable.

Order of August 26, 1971—Burton then filed another petition on November 17, 1970 asking:

1. a surviving spouse's award for Sally Moses,

2. a determination of the value of the life interest of Sally Moses at the time of her death, and

3. for the appointment of a trustee to hold the assets pending the death of Frank Moses and to pay to him only the income to which he was entitled as a life tenant and/or an administrator to construe the will and determine the nature of the bequest to Frank Moses.

The court found as follows:

1. that no man being permitted to profit by his own wrong, Frank Moses has no interest in this estate,
2. that owing to the laxity of Burton, the motions for a widow's award and for the recovery of a value of Sally's life estate are denied,
3. that the court had no jurisdiction to determine who was entitled to the *res* of the estate until the will is construed,
4. that no ruling is made as to whether any prior orders were final,
5. that the petition in all other respects is denied, and
6. that the order disposed of all matters referred to or raised in the petition and is intended to be final with no just reason for the delay of enforcement on appeal.

Burton contends there was no final and appealable order prior to that of August 26, 1971, and that the trial court erred in refusing a widow's award to Sally's estate and in refusing to award a sum equal to the value of Sally's life estate at the time of her death. Moses cross appeals from the finding that he had no interest in the estate and maintains that the June 24, 1968 order was final and appealable so that the trial court had no jurisdiction to enter the order of August 26, 1971. He also maintains that the orders of May 5, 1969 and November 18, 1969 were final and appealable.

OPINION

A review of the June 24, 1968 order discloses that the trial court sustained or overruled each of 19 objections to the final account and order "a corrected final accounting." It appears to be the contention of Moses that by sustaining objections 18 and 19 the trial court determined the controversies as to all parties, i.e., he found (a) Sally's life estate had no value at the time of her death, (b) the undetermined remaindermen were to receive no distribution, and (c) he was to receive the entire balance. Corollary thereto, he maintains that (1) because it disposed of all controversies, the order of June 24, 1968 was final and appealable and (2) because no timely appeal was taken the trial court had no jurisdiction to enter any subsequent orders.

He relies on the following cases in support of his positions: *Lakatos v. Prudence Mutual Casualty Co.* (1969), 113 Ill.App.2d 310, 252 N.E.2d 123; *In re Estate of Murray Ireland* (1971), 132 Ill.App.2d 157, 267 N.E.2d 681; *Peach v. Peach* (1966), 73 Ill.App.2d 72, 218 N.E.2d 504; and *Altschuler v. Altschuler* (1948), 399 Ill. 559, 78 N.E.2d 225.

*Lakatos* involved an appeal from an order dismissing the complaint and a motion to dismiss the appeal was made contending the order was not final. The court held that the order amounted to a dismissal

of the suit and as such was a final order. In *Peach,* after a jury verdict for the plaintiff, the court granted a motion to dismiss from which an appeal was taken by the plaintiff and the defendants contended it was not a final judgment because of the absence of the traditional language "the plaintiff take nothing by virtue of this action and that the defendants go hence without day." It was held that the other terminated the litigation and was final. *In re Ireland* involved a ruling on a petition by a conservator of a widow in the estate of her deceased husband to require support payments. The trial court ordered future payments, reimbursement for the past and awarded attorneys' fees. On appeal it was held to be a complete disposition of the issues raised in the petition and was final and appealable. In *Altschuler,* the trial court ruled that title to property was not held as a partnership asset but by the plaintiff and defendant as tenants in common and our Supreme Court held it was a final order as to this issue although a trustee was required to give an accounting concerning his prior handling of the property.

■■ We do not believe that any of these cases are controlling of the facts here and we particularly note that it was said in *Altschuler* at p. 569:

> "A decree is final  *  *  *  if it finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof. [Citations.]  *  *  *  Where accounts are to be settled between the parties and the decree contains an order of reference by which the accounts are to be stated according to certain principles fixed by the decree, the decree is final, but where the chancellor fails to fix the principles by which the accounts are to be stated *and future judicial action and discretion on his part are contemplated and necessary,* or where some equity different from the equities involved in the accounting remains for further adjudication, then such decree is interlocutory." (Emphasis added.)

■■ Here the trial court sustained or overruled the 19 objections and ordered a corrected accounting which apparently was to conform to his rulings on all objections. We believe that future judicial action and discretion on his part was contemplated and would be necessary to assure conformance to those 19 rulings and, accordingly, we conclude that the order of June 24, 1968, was not final. Furthermore, it does not appear in the order, nor were we able to ascertain from the record, that the interests of the undetermined remainder were represented before the court as they should have been.

■■ The order of May 5, 1969, denied certain requests of Burton, *inter alia,* to vacate or modify the order of June 24, 1968, and to modify all

prior orders to provide for immediate appeal. Having ruled that the June 24, 1968, order was not final and because the May 5, 1969, order (1) also contains no specific findings concerning the disputes involved and (2) again ordered the executor to file an account to conform to the order of June 24, 1968, it also requires future judicial action and discretion. Accordingly, we hold it to be not final.

■■ The November 18, 1969, order resulted from the petition of Burton to vacate the order of June 24, 1968, and Moses moved to strike because (1) Burton had been removed as executor and had no standing to present the petition and (2) the June 24, 1968, order was final and conclusive. The trial court sustained the motion to strike but no specific finding was made nor does the order or the record disclose the basis of its ruling. Having found that the June 24, 1968, order was not final and there being nothing contained in the order of November 18, 1969, which further resolves the controversies, we now conclude that order also lacks finality.

■■ Parenthetically, we note that paragraph (b) of Rule 304 of the Supreme Court Rules provides in part as follows:

"Judgments and Order Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, conservatorship, or similar proceeding which finally determines a right or status of a party."

The committee comments make it clear that paragraph (b) was intended to be merely declarative of existing law as follows:

"Subparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim."

■■ Accordingly, we point out the January 24, 1969, order removing Burton as executor was a final and appealable order and because a timely appeal was not taken, we and the trial court have no jurisdiction to vacate or modify it.

■■■ We turn now to the order of August 26, 1971, from which these appeals are taken and we note, initially, that Moses contests the right of Burton, who has been removed as executor, to bring this appeal. An executor who has been removed and is not shown by the record to have been reinstated has no future right to interfere with or control legal proceedings unless he otherwise would be injured by the order or benefited by its reversal. (*People v. Harrigan* (1919), 291 Ill. 206, 125 N.E.

903.) Here the record discloses that Burton was an heir of Sally Moses and administrator of her estate and, as such, he has standing to bring this appeal concerning matters affecting Sally's estate.

■ ■ He first contends that the court erred in refusing a widow's award to the estate of Sally Moses. We note that she received a life estate in the personalty and realty. In order to pay her a widow's award during her life time it would have been necessary to sell her home which was the sole asset of her husband's estate and in which she lived during her life time. In view thereof we consider that the failure on her part to seek a widow's award was a waiver of any right to an award after her death. (*Huch v. Wickersheim* (1942), 316 Ill.App. 155, 44 N.E. 2d 338). Furthermore, the record discloses that her administrator made claim to an award for the first time in his petition of November 17, 1970, more than 16 years after her death and we consider this delay to be a bar to the estate's claim for a widow's award. (*Gahan v. Golden* (1928), 330 Ill. 624, 162 N.E. 164; *In re Estate of Gersch* (1963), 43 Ill. App.2d 224, 193 N.E.2d 208.) Accordingly, we affirm that portion of the order denying a widow's award to the estate of Sally Moses.

■ ■ Burton next contends that the court erred in denying her estate an award from the estate of Elijah Moses of a sum equal to the value of her life estate had she lived her natural life. In support of this contention he argues that because her successor life tenant, Frank Moses, accelerated his own life estate by murdering her, he would be unjustly enriched if Sally's estate did not receive this award. We believe that there is a public policy in this state that no man should profit by his own wrong or his own crime. It is reflected in section 15a of the Probate Act (Ill. Rev. Stat., ch. 3, sec. 15a) which provides that an heir who murders an ancestor may not inherit from the ancestor, and under section 49a (Ill. Rev. Stat., ch. 3, sec. 49a) which provides that a legacy or devise to a murderer in a victim's will is void. The policy is further manifested in *Bradley v. Fox* (1955), 7 Ill.2d 106, 129 N.E.2d 699, which, in holding that a joint tenant who murders his co-tenant does not succeed to the victim's interest, stated at p. 116:

> "The Illinois statute prohibiting the devolution of property to a convicted murderer from his victim, while not determinative of the rights of the parties in this situation, does evince a legislative policy to deny the convicted murderer the fruits of his crime. That policy would be thwarted by a blind adherence to the legal fiction that a joint tenant holds the entire property at the date of the original conveyance, and acquires no additional interest by virtue of the felonious death of his cotenant, since that rationale sanctions in effect the enhancement of property rights through

murder. For legal fictions cannot obscure the fact that before the murder defendant, as a joint tenant, had to share the profits of the property, and his right to complete ownership, unfettered by the interests of a joint tenant, was contingent upon surviving his wife; whereas, after, and because of, his felonious act that contingency was removed, and he became the sole owner of the property, no longer sharing the profits with any one nor fearing the loss of his interest. * * * We cannot disregard these realities and apply a legal fiction which operates to increase the estate of one who murders his joint tenant, * * *."

In *Wilson v. Board of Trustees* (1969), 108 Ill.App.2d 210, 246 N.E.2d 701, the court held that a widow who had been convicted of the voluntary manslaughter of her husband could not collect pension rights. In *Wilson* the court discussed the public policy as follows at p. 213:

"This philosophy applies where the beneficiary or heir under a life insurance policy murders the assured and thus acquires the proceeds of the policy, where a devisee or legatee feloniously kills his testator, where a person murders his intestate ancestor, and where one joint-tenant murders his other joint-tenant and thus accelerates survivorship rights. This case also squarely holds that such public policy, be it common-law, statutory, or by judicial construction, does not violate constitutional mandates against forfeiture of property or corruption of blood. One cannot forfeit that which he is precluded from having. It is not even debatable in our judgment that if the claimant in this case had been convicted of murder she would have been barred from recovery. This is not so because of any provision of the Descent Act or reference to that Act, but because the public policy of this State so directs."

Here the interest of Frank Moses was contingent upon his surviving Sally Moses and he might have received nothing except for the murder since there is no way of ascertaining with certainty whether he would have survived Sally. We note that in such a case *The Restatement of Restitution,* ch. 11, sec. 188c, states that:

"[T]he murderer can be compelled to surrender his whole interest, and can be compelled to hold it upon a constructive trust. He can be compelled to hold it upon a constructive trust for the estate of the life tenant during the life expectancy of the life tenant at the time of the murder, and subject thereto for the person who would have been entitled in remainder if the murderer had predeceased his victim."

This concept was recommended by our supreme court in *Bradley* where at p. 117 it said:

"The constructive trust concept, referred to as the 'formula through which the conscience of equity finds expression' [citation.], has been invoked whenever the legal title to property has been obtained under circumstances which render it unconscionable for the holder to retain and enjoy the beneficial interest. The imposition of such a trust under the circumstances of the instant case, where the defendant has acquired the sole legal title to the entire property and thereby enhanced his property rights through the murder of this joint tenant, has approbation not only in the case law, the Restatement of Restitution, and in legal treatises, but is consistent with the legislative policy evidenced in section 15a (par. 167) of the Probate Act. Moreover, as tersely stated by Justice Cardozo, 'The social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership.' " Cardozo, Nature of the Judicial Process, 43.

■■ Although there is apparently no decision in this state which extends the public policy against unjust enrichment to one who accelerates his own life interest by murdering a predecessor life tenant, we hold that the public policy should be so extended to prevent such a murderer from gaining any benefit from his crime and we affirm that part of the order holding Frank Moses had no interest in Elijah's estate and we hold that Frank Moses, by virtue of the murder of Sally Moses, is deprived of his life interest under the will of Elijah Moses.

■■ We further conclude that the reasoning of the Restatement of Restitution should be followed in such a situation and, accordingly, we reverse that portion of the order denying to the estate of Sally Moses the value of her life estate. The record discloses that Elijah died in 1952 and Sally was murdered in 1954, and because both estates remain open we believe their closing will be expedited by resolving other issues here. Accordingly, we hold that the administrator of Elijah's estate should be directed, subject to the further order of the circuit court:

1. to collect all of the assets of the estate of Elijah Moses,
2. to determine the life expectancy of Sally Moses at the time of her death, using the mortality tables current in 1954, and
3. to determine a value of the life interest of Sally Moses at the time of her death and pay the amount of that value to her estate after first providing for necessary administration costs and expenses.

■■ The will of Elijah Moses provided that Frank Moses was to have a room in Elijah's home during the life time of Sally Moses and was also to receive the rents from a basement room from July 15, 1955. These

are benefits he acquired before the murder of Sally and, because our holding is limited to acquisition of any benefits resulting from the murder, Frank Moses will not be deprived of them. Therefore, the administrator should be directed also, subject to the further order of the circuit court, to determine:

1. the value, if any, of the rental of the west basement room for the number of years of the determined life expectancy of Sally Moses and to pay from the balance the amount of that value to Frank Moses, and

2. the value, if any, of the use of a room in the home for the number of years of the determined life expectancy of Sally Moses, excluding the number of years Frank Moses was in the penitentiary for her murder, and to pay from the balance the amount of the value to Frank Moses.

■■ In addition, we find from the paragraphs third and fourth of his will that Elijah intended that his realty was to vest in Frank Moses at the death of Sally provided he survived with lawful issue at that time, otherwise he was to have a life estate only, which we have held to be forfeited by his crime. The record indicates that Frank Moses had no lawful issue at the time of Sally's death, however, inasmuch as we have extended her life interest through her life expectancy, we hold that the realty vests in Frank Moss if he was or is then surviving with lawful issue at the expiration of the determined life expectancy of Sally. If Frank Moses does or did not so survive and had or has no lawful issue at that time then, because he has been deprived of his life interest, the realty (the net proceeds here) shall be distributed to the remaindermen as directed in the will.

Accordingly, the administrator should also be directed, subject to the further order of the circuit court, to hold the balance remaining until the expiration of the determined life expectancy of Sally and, if at that time Frank Moses survives with lawful issue, the balance of the proceeds shall vest and shall be paid to him after other payments are made. If, however, at that date Frank Moses is not surviving with lawful issue, the administrator shall be directed to make distribution to the remaindermen under paragraph four of the will.

■■ Under all the circumstances of this case it does not seem appropriate to us that the 10% charge against John Burton, as executor, or against the public administrator under Section 308 of the Probate Act should be enforced.

Affirmed in part, reversed in part and remanded with directions.

DRUCKER, P. J., and ENGLISH, J., concur.