ODESSA BAILEY, Plaintiff-Appellant, *v.* THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND, Defendant-Appellee.

First District (3rd Division)    No. 76-224

Opinion filed August 3, 1977.

Melvin Gaines, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This appeal requires resolution of two questions. First, does the evidence before the Board of Trustees of the Policemen's Annuity and Benefit Fund (the Board) support its finding that the police officer's death was caused by a gunshot wound intentionally and unjustifiably inflicted by his wife 46 days prior to his death? Second, does the intentional and unjustified shooting of a police officer by his wife causing his death preclude her from collecting a widow's annuity under the State's pension laws?

A jury found Odessa Bailey, the widow, guilty of the voluntary manslaughter of her husband, Leroy, a Chicago police officer. Her conviction was reversed and remanded by this court (*People v. Bailey* (1973), 15 Ill. App. 3d 558, 304 N.E.2d 668) because of an improper instruction relating to self-defense. After remandment, she agreed to plead guilty to the lesser offense of aggravated battery. At the change-of-plea hearing, the Assistant State's Attorney stated for the record the facts to which witnesses, if called, would testify. Mrs. Bailey's attorney stipulated to these facts, and Mrs. Bailey informed the court they were substantially correct.

The stipulation entered at the change-of-plea hearing was later

introduced at the Board hearing on Mrs. Bailey's petition for annuity benefits as the surviving widow of a police officer. During the latter hearing, the court reporter who transcribed the proceedings at the change-of-plea hearing read the stipulated statement from her notes, testifying that the statement had been presented to the court at the earlier hearing. The stipulated facts introduced at the Board hearing were:

"That on November 5th, 1970, at approximately 8:00 p.m., the police received a telephone call from the defendant, that being the Chicago Police, reporting that her husband, a Chicago Police officer, had been shot. When the police arrived they found the husband in the basement seated in a chair and bleeding from a head wound. He died later after being taken to the hospital. A revolver was found in his pocket. The defendant, Odessa Bailey, told the police that she had been out and when she returned home she heard a noise, she went to the basement and found her husband bleeding. This statement was supported by the defendant's daughter.

The defendant agreed to accompany the police to the police station to reduce her statement to writing. She also gave permission to one of the police officers to search her home. At the police station the defendant gave a two page written statement to the effect that she found the deceased bleeding and also stated that the only gun in the home was that owned by the deceased, that being her husband, LeRoy Bailey as named in the indictment in this case.

Meanwhile the police had found a second revolver with one spent casing in one of the closets of the defendant's home. The gun was taken to the police station and shown to the defendant, who at that time denied any knowledge of it. While one of the officers left to determine ownership of the gun through registration records, the other officer continued to question the defendant about the gun. The defendant then admitted to ownership of the gun. Whereafter, the police officer returned to the station to advise the defendant that the defendant was the registered owner of the gun. For the first time that evening the police then informed the defendant of her constitutional rights.

An Assistant State's Attorney was summoned to the police station, and, before taking a statement, again fully informed the defendant of her constitutional rights. The defendant gave a statement that after the deceased struck and kicked her, for no apparent reason, she went to the bedroom, took the gun from the nightstand, walked down to the basement where her husband was seated and shot him in the heat of the moment."

The Board denied Mrs. Bailey's claim to an annuity on the ground she

feloniously and wrongfully took her husband's life. After receiving her petition for a review of the Board's decision under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264, *et seq.*), the circuit court affirmed the findings and decision of the Board, concluding that the Board's findings were not against the manifest weight of the evidence.

■■■ The judicial function on appeals from administrative decisions under the Administrative Review Act is limited to determining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. Judicial judgment should not be substituted for that of the administrative agency, and courts may not reweigh the evidence or make independent determinations of the facts. The sole question before both the circuit court and this court with respect to findings of fact is whether the finding of the administrative agency was supported by the manifest weight of the evidence. (*Paglini v. Police Board* (1975), 61 Ill. 2d 233, 239, 335 N.E.2d 480; *Kerr v. Police Board of Chicago* (1974), 59 Ill. 2d 140, 141-42, 319 N.E.2d 478; *Davern v. Civil Service Com. of Chicago* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713; *Davis v. Retirement Board of Policemen's Annuity Fund of Chicago* (1975), 30 Ill. App. 3d 318, 323, 332 N.E.2d 446.) The Board's finding that Mrs. Bailey shot her husband is not against the manifest weight of the evidence. It is supported both by the stipulated facts introduced at the change-of-plea hearing and by Odessa Bailey's responses to questions an Assistant State's Attorney asked her immediately after the shooting, which were recorded by a court reporter.

The record shows that more than 6 weeks elapsed between the date LeRoy Bailey suffered his gunshot wound and his death. Although Mrs. Bailey contends nothing in the record establishes that if she shot her husband, this shooting caused his death, the stipulated facts refute this contention. After referring to Mrs. Bailey's call to the police to report that her husband had been shot and to the arrival of the police at the Bailey residence where they found her husband bleeding from a head wound, the stipulation states, "He died later after being taken to the hospital." On the basis of this statement and the other evidence, the Board was justified in inferring that he died of the gunshot wound. If that was not the meaning of the stipulation, there would have been no purpose for including in it a reference to his death after his hospitalization.

Finally, the arrangement agreed upon at the change of plea was that the time that Odessa Bailey had already served would be the total imprisonment to which she would be sentenced for the aggravated battery conviction. Defendant's counsel argued on appeal that she agreed to the stipulation at the change-of-plea hearing because after having been confined for 3 years, she would have stipulated to anything to gain her release. We can understand Mrs. Bailey's desire to be released from confinement. But if she stipulated to facts which were not accurate in

order to obtain her release, it was her burden in her appearance before the Board to produce evidence rebutting or explaining the facts set forth in the stipulation. She failed to do this, and made no showing which could have convinced the Board that the stipulated facts were erroneous or unreliable. The Board was, therefore, free to accept the stipulated facts at their face value, and these facts support the Board's findings.

■■■ The public policy of this State precludes a wrongdoer from profiting from his intentionally committed wrongful act. This policy was reasserted recently by our supreme court in *State Farm Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 595, 363 N.E.2d 785. In *Bradley v. Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699, after noting that a beneficiary of a life insurance policy who murdered the insured could not recover on the policy, the court held that a joint tenant who murdered his co-tenant would not be entitled to take the co-tenant's interest by survivorship. The court also noted in *Bradley v. Fox* that the statutes of this State prevent a person convicted of murder from inheriting from the murdered person or acquiring as a surviving spouse by reason of the death any interest in the deceased spouse's estate. (Ill. Rev. Stat. 1975, ch. 3, par. 15a.) The court in *Bradley* observed at page 116:

> "Contracts and other instruments creating rights should properly be construed in the light of prevailing public policy evidenced in the statutes. [Citations.] The Illinois statute prohibiting the devolution of property to a convicted murderer from his victim, while not determinative of the rights of the parties in this situation, does evince a legislative policy to deny the convicted murderer the fruits of his crime."

The *Bradley* court also quoted with approval Mr. Justice Cardozo, who said in *The Nature of the Judicial Process* at page 43 (1921):

> "[T]he social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership."

In *Wilson v. Board of Trustees* (1969), 108 Ill. App. 2d 210, 246 N.E.2d 701, the court concluded that a widow found guilty of voluntary manslaughter of her husband could not be a beneficiary of her husband's pension rights. The holding was grounded in the public policy expressed in the common law maxim that no person shall profit by his own crime or wrong. See also Seipel v. State Employee's Retirement System (1972), 8 Ill. App. 3d 182, 185, 289 N.E.2d 288.

These cases demonstrate that the courts of this State adhere to the rule that one who intentionally and unjustifiably takes the life of another should not inherit or receive any monetary benefit as a result of the death. Although no provision in the Policemen's Annuity and Benefit Fund Act of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 5—101 *et seq.*) excludes a person who intentionally and unjustifiably causes the death of a

participant in the plan from receiving annuity benefits, the public policy which prevents a wrongdoer from profiting from his intentionally committed wrongful act must be regarded as incorporated in the pension legislation.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.