BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Plaintiff-Appellee, *v.* COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, AFT, AFL-CIO, *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 76-941

Opinion filed November 29, 1977.

PUSATERI, J., dissenting.

Gilbert Feldman, of Cornfield and Feldman, of Chicago, for appellants.

Lawrence T. Stanner and Associates, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a declaratory judgment and injunction order of the circuit court of Cook County. The declaratory judgment and injunction (1) invalidated an arbitrator's award to defendant Cook County College Teachers Union, Local 1600, AFT, AFL-CIO and (2) enjoined plaintiff Board of Trustees of Community College District No. 508 from giving force and effect to such award.

During the summer and fall of 1975, plaintiff and defendant were engaged in collective bargaining negotiations over what subsequently became the present collective bargaining agreement between the parties. An agreement was not reached at that time and a strike ensued. Approximately 90 percent of plaintiff's faculty refused to cross the picket line. The strike was ordered to terminate by the circuit court of Cook

County but notwithstanding this order the strike endured for a total of three weeks.

During the course of the strike, only the nonstriking faculty members were paid regular wages. The striking faculty received no pay for the duration of the strike. Subsequently, those faculty members who did not strike received salary in excess of what would have been received had there been no strike.

After the termination of the strike, plaintiff and defendant entered into a collective bargaining agreement which provided, *inter alia*, a formula by which "extra work" assignments for faculty members would be determined. All "extra work" assignments were to be based upon "income earned," in a manner so as to provide a greater opportunity for faculty members who had earned less income to acquire "extra work" assignments and earn extra, supplementary income.

Plaintiff then refused to include the income earned by the nonstrikers during the period of the strike as "income" upon which "extra work" assignments could be based. Plaintiff submitted that income earned for prior "extra work" assignments was the sole income upon which "extra work" assignments could be based. Plaintiff reasoned that the income earned by the nonstrikers during the period óf the strike was "regular" income—that income associated with a regular semester's teaching responsibilities.

Defendants disputed plaintiff's computations, urging that the nonstrikers income earned over the duration of the strike was to be included in the "income" upon which "extra work" assignments were to be based. Defendants' contentions, if true, would cause "extra work" assignments to be distributed to the striking faculty due to the fact that the striking faculty would have earned less income over the course of the school year. Defendants filed a formal grievance protesting plaintiff's refusal to include the income earned by the nonstriking faculty for the duration of the strike. Plaintiff denied the grievance.

Pursuant to an arbitration clause in the collective bargaining agreement this dispute was submitted to arbitrator Albert A. Epstein for arbitration. Epstein found in favor of defendants' position. Plaintiff thereafter commenced the aforementioned action in the circuit court of Cook County. It is from the circuit court's judgment, in favor of plaintiff, that defendant appeals.

We need not belabor the mathematical niceties of the formula contained in the collective bargaining agreement for the purposes of this appeal. Furthermore, it is unnecessary for us to construe the collective bargaining agreement in disposing of this case.

■■ The Illinois Supreme Court, in *Board of Trustees v. Teachers*

*Union* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, held that the determination of "extra work" assignments was a proper subject of collective bargaining agreements and arbitration. The collective bargaining agreement in the instant case contained an "extra work" determination provision which, *a fortiori*, was also properly the subject of arbitration. An arbitration decision was entered pursuant to this provision and such decision must be deemed binding upon the parties to the collective bargaining agreement. The circuit court's declaratory judgment and injunction order, invalidating the arbitration decision, improperly interfered with said decision by the arbitrator. Therefore, the circuit court's judgment and order were erroneously entered and must be reversed.

Reversed.

DOWNING, P. J., concurs.

Mr. JUSTICE PUSATERI, dissenting:

I respectfully dissent.

The only decision cited in the majority opinion is that of *Board of Trustees v. Teachers Union* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, and the majority correctly states that the decision holds that the determination of "extra work" assignments was a proper subject of collective bargaining agreements and arbitration. However, it is to be noted that this opinion dealt with three consolidated cases involving different, but related, issues in disputes between substantially the same parties. The court also found that an arbitrator is without authority to award an employment contract as a remedy for the violation of a collective bargaining agreement and that the matter of faculty promotions is a nondelegable power of the Board which it cannot be compelled to submit to arbitration.

The facts in the case at bar reveal that during the summer and fall of 1975, the Board and the Union were engaged in collective bargaining negotiations, which was the basis for the subsequently drafted collective bargaining agreement between the parties. However, this agreement was not reached by the beginning of the fall semester of 1975-1976 academic year. As a result, the Union caused a strike to be conducted in which 90% of the faculty refused to cross the picket line and in fact, participated in the strike against the Board. Approximately 10% of the Board's teaching personnel did cross the picket lines and report to work each day of the strike. On August 25, 1975, the strike was ordered terminated by a judge in the circuit court of Cook County on the basis that the strike was illegal and contrary to public policy.

Notwithstanding the specific injunction ordered by the court, 90% of the

faculty continued to participate in the strike until September 15, 1975, when the Union called off the strike against the Board. During the three-week duration of this strike, the 10% of the Board's faculty who crossed the picket lines and did their regular work assignments received their regular pay. The teachers who participated in the strike against the Board did not work during this period and consequently were not paid. Due to the strike, the semester was extended for two weeks and all the teachers worked for this extended time. Hence, there was a wage differential between striking and nonstriking employees; the nonstriking employees receiving a salary slightly in excess of what they would have received had there been no strike.

The new collective bargaining agreement took effect in the fall of 1975 after the termination of the strike. Pursuant to this agreement, the Board commenced the calculation of rotation points to determine what faculty members would be assigned summer course offerings. This summer teaching was considered "extra work" under the new collective bargaining agreement. The Unions filed a grievance contending that the income differential caused by the strike had to be included in the rotation point calculation. The consequence of this position would automatically give the striker a higher or first preference for extra work over an otherwise equally situated nonstriker. The Board denied the grievance on the ground that the agreement did not permit the inclusion of such strike differential income in the calculation of rotation points. The Board's position, and the trial court's ruling below, was, that under the agreement, rotation points were not assignable for income attributable to one's regular work assignment, and the income earned during the strike was attributable to regular work assignment, not to the "extra work" for which rotation points are assigned. The Board also denied the grievance on the grounds that to give striking employees a preference for extra work assignments because they disobeyed an injunction order, and to discriminate against nonstriking public employees because they obeyed the court order, would be unlawful and contrary to public policy, and would be permitting the violators of the court order to profit from their own wrongdoing.

Our courts have held that strikes by public employees are illegal and contrary to public policy and have not been reluctant to issue injunctions against them. (*City of Pana v. Crowe* (1974), 57 Ill. 2d 547, 316 N.E.2d 513; *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 207 N.E.2d 427; *Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 264 N.E.2d 18.) It has also been held that "[t]he public policy of this State precludes a wrongdoer from profiting from his intentionally committed wrongful act." *Bailey v. Retirement Board* (1st Dist. 1977). 51 Ill. App. 3d 433, 437, 366 N.E.2d 966. See also *State Farm*

*Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 595, 363 N.E.2d 792.

The court in *Board of Trustees v. Teachers Union* at page 482 stated, "In our judgment, the teachers here involved are entitled to unqualified award of back pay to the extent that they established that they were available and willing to do the work which should have been offered them during the summer of 1971." Similarly, the striking teachers in the case at bar should not be held to be entitled to a higher or first preference for extra work, since at the time they were unlawfully on strike, they clearly were not "available and willing to do the work."

It is axiomatic that the law prefers the construction of a contract that will make it legal to one which will render it illegal. (*Crittenden v. French* (1859), 21 Ill. 598.) Our supreme court has also observed that: "Contracts and other instruments creating rights should properly be construed in the light of prevailing public policy evidenced in the statutes." (*Bradley v. Fox* (1955), 7 Ill. 2d 106, 116, 129 N.E.2d 699.) Clearly, we would have found it to be illegal and contrary to public policy if the parties to the collective bargaining agreement in the instant case had written into the agreement a clause stating that any faculty personnel who disobeyed a lawful injunction order of a circuit court by refusing to report for work during the strike would be assigned a higher priority for employment benefits than would be given to those members of the faculty who obeyed such an injunction order. The arbitration award so interprets the agreement, and the trial court was correct in refusing to place its judgmental order of approval on same when it vacated and enjoined such award, and found it to be illegal and contrary to public policy and to the contract rights of the faculty, and declared it to be null and void and of no force and effect.

For the foregoing reasons, I believe that the declaratory judgment and injunction order of the circuit court of Cook County should be affirmed.