WILLIAM JAGIELNIK, Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF MUNDELEIN *et al.*, Defendants-Appellants.

Second District    No. 2—94—0652

Opinion filed April 19, 1995.

870

Charles F. Marino and David M. Marino, both of Chicago, and Charles W. Smith, of Rosing, Applehans, Smith, Ericksen & Zeit, Ltd., of Waukegan, for appellants.

Stanley H. Jakala, of Berwyn, for appellee.

Brian A. Schroeder, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for *amicus curiae.*

JUSTICE THOMAS delivered the opinion of the court:

The defendants, Board of Trustees of the Police Pension Fund of the Village of Mundelein (Pension Board), the Village of Mundelein, Wallace Frasier, and Raymond Rose, appeal from an administrative review order of the circuit court of Lake County reversing a ruling of the Pension Board which denied the petition of the plaintiff, William Jagielnik, for a not-on-duty disability pension. We reverse.

The record reveals the relevant facts to be as follows. On May 30, 1989, the plaintiff filed with the Pension Board a petition for a 50% not-on-duty disability pension as provided for in section 3—114.2 of the Illinois Pension Code (Code) (40 ILCS 5/3—114.2 (West 1992)). At the time he filed the petition, the plaintiff was a police officer with the Mundelein police department and had charges of misconduct pending against him before the Mundelein board of fire and police commissioners, and criminal charges pending against him in the circuit court of Lake County, Illinois.

The charges before the board of fire and police commissioners alleged that the plaintiff, while in uniform and on duty, committed various offenses against a young woman, J.M., in February, March, and April 1989. Allegedly, the plaintiff grabbed J.M.'s breasts on one occasion and made lewd and suggestive remarks to her on several occasions. Also, allegedly, the plaintiff ordered J.M. to meet him at a specific time and place and be friendly with him or he would cause her problems with the Village of Mundelein and cause traffic citations to be issued against her. The board of fire and police commissioners did not hear the matter because the plaintiff resigned as a police officer on June 2, 1989.

The criminal charges pending before the circuit court of Lake County, Illinois, involved the same conduct as the charges before the board of fire and police commissioners. Pursuant to a negotiated plea agreement, the State's Attorney nol-prossed two felony counts against the plaintiff, and the court found the plaintiff guilty only of the remaining count, a misdemeanor battery.

Along with his petition to the Pension Board for a disability pension, the plaintiff submitted a written report dated May 27, 1989, from Dr. Marlene E. Casiano, a psychiatrist. Dr. Casiano stated that the plaintiff was suffering from severe symptoms of depression and that "the precipitant for his severe depressive reaction was his being accused of making sexual advances to a woman at a grocery store."

At the request of the Pension Board, three other psychiatrists

examined the plaintiff. All three were of the opinion that the plaintiff was mentally disabled for service as a police officer and that his disability was the consequence of being accused of making sexual advances to a woman at a grocery store and the events which followed. The three psychiatrists also stated that the plaintiff had no history of a prior mental illness nor was there any evidence that he might have had a prior mental illness.

The Pension Board set the matter for a public hearing on September 14, 1989. Following a continuance, the Pension Board convened on October 17, 1989, and the plaintiff moved for a further continuance and to bar the hearing altogether. The Pension Board granted the request for a further continuance, but denied the plaintiff's motion to bar the hearing in its interim ruling dated December 12, 1989, and prepared to proceed with a hearing. On January 16, 1990, the plaintiff filed a complaint for administrative review of the Pension Board's December 12, 1989, interim ruling. The trial court dismissed the complaint, having concluded that the Pension Board's interim ruling was not a final order which terminated the proceedings before the Board. The plaintiff appealed the dismissal of the complaint to this court, which affirmed the dismissal. See *Jagielnik v. Board of Trustees of the Police Pension Fund* (1991), 211 Ill. App. 3d 26.

The hearing on the petition occurred on October 20, 1992. The parties jointly requested that the Pension Board receive into evidence the medical reports of Dr. Alan N. Miller, dated June 29, 1989; Dr. R. de la Torre, dated July 17, 1989; and Dr. John R. Curns, dated July 20, 1989. The parties stipulated that, if called as witnesses, the doctors would testify to the matters contained in the reports. The reports were received into evidence.

The plaintiff's attorney advised the Pension Board that the plaintiff was not present at the hearing because of stress and informed the Board that the plaintiff would not be offering any evidence. Defendant Raymond Rose, the Mundelein police chief, produced three witnesses: J.M.; Keith Kalodimos, a Mundelein police officer; and defendant Wallace Frasier, the former Mundelein police chief.

J.M. testified that, in February 1989, she was 19 years of age and was employed at the White Hen Pantry, in Mundelein. One evening toward the end of February 1989, the plaintiff came into the White Hen Pantry. J.M. was alone in the store and permitted the plaintiff to use the telephone at his request. When he passed her on the way to the telephone, he grabbed her breasts. J.M. was shocked, upset, and scared. As time went on, the plaintiff came into the White Hen

Pantry more frequently. J.M. did not feel comfortable with the plaintiff. Although she did not provoke or encourage him, the plaintiff made remarks to her of a sexual and perverted nature.

J.M. further testified that, on April 11, 1989, while she was driving her car in Mundelein, the plaintiff signaled for her to pull into the Jewel parking lot. She did not have a Village sticker on her car and the windshield was cracked. The plaintiff said he thought they could be good friends and she could do things for him that his wife did only once a month. He also said he wanted her to go with him to a motel and that, if she did not do so, he would write tickets for her not having a vehicle sticker and the windshield being cracked. The plaintiff told her to meet him the following day when he got off work between 4 p.m. and 5 p.m., in the parking lot next to Bill's Pub. J.M. did not want to meet the plaintiff, but was afraid of him. Later, J.M. telephoned the police station in Mundelein and informed the police chief, Wallace Frasier, what had occurred regarding the plaintiff, and Frasier arranged for police officer Keith Kalodimos to meet her. J.M. went to the parking lot next to Bill's Pub between 4 p.m. and 4:15 p.m. on April 12, 1989. The plaintiff arrived by car and rolled down his window to speak with J.M. He told her to get in the car with him. At that point, Kalodimos walked up to the plaintiff's car and J.M. left.

Officer Keith Kalodimos testified that when he met with J.M. she informed him as to what occurred with respect to the plaintiff. He observed J.M. going to the parking lot next to Bill's Pub about 4 p.m. on April 12, 1989, and the plaintiff meeting J.M. in the parking lot and conversing with her. Kalodimos then approached the plaintiff and informed him that J.M. had made a complaint against him. Kalodimos accompanied the plaintiff to the police station, where he questioned the plaintiff regarding the complaint. The plaintiff was given his *Miranda* rights. When Kalodimos asked the plaintiff whether he had touched J.M.'s breasts, the plaintiff replied that he did not recall having done so.

Wallace Frasier, the former police chief, testified that J.M.'s telephone call to the police station was tape-recorded. The tape, which recorded J.M.'s conversation with Frasier and Kalodimos, was offered and received into evidence. Frasier testified that he had known the plaintiff for 17 years while both were employed by the Mundelein police department and that the plaintiff had never complained of any mental or physical disabilities prior to being charged with the offense against J.M. Frasier produced copies of the plaintiff's tour cards for April 11, 1989, and April 12, 1989, showing that the plaintiff was on duty from 8 a.m. to 4 p.m. Frasier also produced the plaintiff's June

2, 1989, resignation letter. These documents were offered and received into evidence. Frasier further testified that, following the incident with J.M., the plaintiff had been suspended from duty, that charges had been filed against the plaintiff with the board of fire and police commissioners, and that criminal charges had been filed against the plaintiff. The plaintiff then petitioned for a disability pension and resigned from the police department.

The matter was continued to February 25, 1993, for a decision of the Pension Board. Based on the testimony of the witnesses, the exhibits received into evidence, and the arguments of counsel, the Pension Board made the following findings of fact: (1) that the plaintiff was mentally disabled at the time he filed the petition for a disability pension on May 30, 1989; (2) that the plaintiff had no past history of psychiatric disorders or mental illness; (3) that the plaintiff's mental disability was the result of the charges made against him by J.M. and the disciplinary and legal consequences he encountered in connection therewith; (4) that the charges against the plaintiff by J.M. were true and not false as he had claimed; and (5) that the plaintiff's mental disability, at the time he filed the petition for a disability pension, was caused by his own intentionally committed wrongful acts toward J.M. The Pension Board then issued its ruling on the matter, denying the plaintiff's petition, based on its determinations: (1) that section 3—114.2 of the Code incorporated public policy which prevents a wrongdoer from profiting from his intentionally committed wrongful acts; and (2) that the plaintiff was not eligible for a not-on-duty disability pension because his disability was caused by his own intentionally committed wrongful acts toward J.M.

The plaintiff appealed the ruling of the Pension Board to the circuit court of Lake County, Illinois. The circuit court found that the Pension Board's ruling was both factually against the manifest weight of the evidence and that the Board's interpretation of public policy into the language of section 3—114.2 of the Code, and the Code generally, was an erroneous construction of the statutes and the legal precedent. Accordingly, the trial court entered an order on May 9, 1994, reversing the Board's ruling. The defendants filed a timely appeal seeking reversal of that order. The Illinois Association of Chiefs of Police filed an *amicus curiae* brief.

In support of their position that the plaintiff should be denied a not-on-duty disability pension, the defendants contend on appeal: (1) that the Pension Board's factual findings and conclusions should be regarded as true and correct and not against the manifest weight of the evidence; and (2) that sound public policy mandates that the

plaintiff should not be allowed to use depression suffered as a result of charges of misconduct being filed against him as a basis for a mental disability pension where such charges are true.

■ As a preliminary matter, it will be helpful to discuss the principles that apply on review of the subject administrative decision. Upon administrative review, the function of both the trial and appellate courts is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence. (*Trettenero v. Police Pension Fund* (1994), 268 Ill. App. 3d 58, 63.) In order to make such a finding, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 209, citing *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653.) When analyzing claims arising from an administrative agency's determinations, the agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West Supp. 1993); *Worth v. Board of Trustees of the Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353.) Because the weight of the evidence and the credibility of the witnesses are uniquely within the province of the administrative agency, there need only be some competent evidence in the record to support its findings. *Hahn v. Police Pension Fund*, 138 Ill. App. 3d at 209.

The decision of an administrative agency will also be reversed if it is legally erroneous. (*Iwanski v. Streamwood Police Pension Board* (1992), 232 Ill. App. 3d 180, 184.) Courts are not bound to accord the same measure of deference to an administrative agency's conclusions of law as is given to its findings of fact. *Worth v. Board of Trustees of Police Pension Fund*, 230 Ill. App. 3d at 353.

We turn now to the merits of the appeal. The defendants first contest the trial court's finding that the Pension Board's ruling was factually against the weight of the evidence. The defendants argue that the Pension Board's factual findings and conclusions should be regarded as true and correct and not against the manifest weight of the evidence.

■ The Pension Board made five specific findings of fact upon which it based its decision to deny the plaintiff's not-on-duty disability pension petition. In analyzing the claims arising from the Pension Board's determinations, the trial court was obligated to deem the Board's findings and conclusions on questions of fact to be *prima facie* true and correct. (See 735 ILCS 5/3—110 (West Supp. 1993); *Worth v. Board of Trustees of Police Pension Fund*, 230 Ill. App. 3d at 353.) In that regard, in its May 9, 1994, order, the trial court stated:

"The Board then made its factual findings, which are considered by this Court to be true and correct."

The trial court went on to state:

"Yet, in the Board's decision which included finding the plaintiff disabled, the Board denied the pension. This decision is factually against the manifest weight of the evidence, which is due, in part, to the Board's misinterpretation of the 'not on duty' disability pension statute, 40 ILCS 5/3—114.2 (1993)."

In light of the trial court's determination that the Pension Board's factual findings were true and correct, we find that the trial court erred in concluding that the Board's decision was factually against the manifest weight of the evidence. The trial court's conclusion was not based on the court's dispute as to the accuracy of the Board's factual findings in light of the evidence; rather, it was based on the court's stated concern with the Board's legal analysis of the applicable statutes. Thus, we reverse that portion of the May 9, 1994, order which found the Pension Board's decision to have been factually against the manifest weight of the evidence.

The defendants also contest the trial court's finding that the Pension Board's interpretation of public policy into the language of section 3—114.2 of the Code was an erroneous construction of the statutes and the legal precedent. The defendants argue that public policy should preclude the plaintiff from receiving a not-on-duty mental disability pension where his depression developed as the result of charges brought against him for his own misconduct and where the charges were found to be true. This is a question of first impression in this State. See generally *Stec v. Oak Park Police Pension Board* (1990), 204 Ill. App. 3d 556; *Hahn v. Police Pension Fund*, 138 Ill. App. 3d 206 (both cases involving awards of mental disability pensions to police officers based on depression when faced with charges of misconduct, but where the officers suffered from depression prior to the charges being filed against them, and where the depression was not merely the result of having to face the charges).

■ While the term "public policy" lacks precise definition, it may be stated generally as a legal principle that no one may lawfully do that which has a tendency to injure the public welfare. (*Holstein v. Grossman* (1993), 246 Ill. App. 3d 719, 725-26, citing *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 341.) The public policy of this State is reflected in its constitution, its statutes, and its judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d at 341.

■ We turn first to the relevant State statutes, to determine whether they express public policy which would preclude a disability

pension award to the plaintiff under the facts of this case. Article 3 of the Code (40 ILCS 5/3—101 *et seq.* (West 1992)) governs all matters relating to the police pension fund. Here, the plaintiff sought a non-duty disability pension pursuant to section 3—114.2 of the Code, which provides:

> "A police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." (40 ILCS 5/3—114.2 (West 1992).)

Given the facts in the underlying action, a literal reading of this statutory provision provides for a 50% disability pension to the plaintiff.

■ There exists a statutory exception to pension benefits, in the case of a felony conviction. Section 3—147 of the Code provides, in pertinent part:

> "None of the benefits provided in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a police officer." (40 ILCS 5/3—147 (West 1992).)

Here, pursuant to a negotiated plea agreement, the State's Attorney nol-prossed two felony counts against the plaintiff, and the court found the plaintiff guilty only of the remaining count, a misdemeanor battery. Accordingly, this statutory provision would not bar a disability pension award to the plaintiff.

■ We turn next to judicial decisions of this State, to determine whether they express public policy which would preclude a disability pension award to the plaintiff under the facts of this case. It has been well established, through Illinois case law, that public policy precludes a wrongdoer from profiting from his or her intentionally committed wrongful acts. (See *State Farm Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 595; *In re Estate of Braun* (1991), 222 Ill. App. 3d 178, 183; *Bailey v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1977), 51 Ill. App. 3d 433, 437; see also *Bradley v. Fox* (1955), 7 Ill. 2d 106, 115; *Wilson v. Board of Trustees of the State Universities Retirement System* (1969), 108 Ill. App. 2d 210, 214-15; *Seipel v. State Employees' Retirement System* (1972), 8 Ill. App. 3d 182, 186.) Although these cases all involve acts which resulted in the death of a person, and are thus factually distinguishable from the case at hand, we find the public policy concern expressed therein to be equally applicable to this action.

In the case before us, the plaintiff's actions toward J.M. were intentional and egregious. As a result thereof, J.M. filed charges against the plaintiff. The charges, which were determined to be true, caused the plaintiff's mental depression which led to his subsequent retirement. The plaintiff was charged with two felony counts, but was convicted only of a misdemeanor battery under a plea arrangement. He now wishes to profit from his own misconduct by collecting a mental disability pension. To permit the plaintiff to benefit from a public pension plan as a result of intentional wrongdoing to another is, we think, not only to permit the plaintiff to benefit by his own wrongdoing, but is fundamental injustice.

Moreover, we find that the plaintiff is precluded from a not-on-duty disability pension award despite the absence of any statutory provision in the Code governing situations where one profits from one's own wrongdoing. The statutes of this State do not and cannot contemplate every circumstance which may occur. Certain cases, such as this one, present extraordinary factual circumstances which call upon the judicial system to protect the public interest where the legislature has not acted. Appellate courts in this State have done so before. In *Bailey v. Retirement Board of Policemen's Annuity & Benefit Fund* (51 Ill. App. 3d at 437-38), the Appellate Court, First District, held:

> "Although no provision in the Policemen's Annuity and Benefit Fund Act of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108$^1$/$_2$, par. 5—101 *et seq.*) excludes a person who intentionally and unjustifiably causes the death of a participant in the plan from receiving annuity benefits, the public policy which prevents a wrongdoer from profiting from his intentionally committed wrongful act must be regarded as incorporated in the pension legislation."

More recently, in *In re Estate of Braun* (222 Ill. App. 3d at 183), we held:

> "Although no provision in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*) excludes a person who intentionally and unjustifiably causes the death of a party to a marital settlement agreement from receiving the benefits of that agreement, we believe the public policy set forth in section 2—6 of the Probate Act, which prevents a wrongdoer from receiving any property, benefit, or other interest from his intentionally committed wrongful act, must be regarded as incorporated in the dissolution legislation."

Our decision to deny the plaintiff's not-on-duty disability pension petition is based on the public policy concern that the plaintiff should not profit from his own wrongdoing. Our decision is limited to the

narrow facts presented by this case and is not to be extended generally to all misdemeanors. We reverse that portion of the May 9, 1994, order which found the Pension Board's decision to have been legally erroneous.

For the foregoing reasons, we reverse the trial court's May 9, 1994, order and reinstate the Pension Board's ruling denying the plaintiff's petition for a not-on-duty disability pension.

Reversed.

INGLIS and RATHJE, JJ., concur.